No. 24-5141

_____

## IN THE

# United States Court of Appeals

## FOR THE SIXTH CIRCUIT
_____

MICHAEL WALDEN,

*Plaintiff-Appellant,*

v.

GENERAL ELECTRIC INTERNATIONAL, INC., A/K/A GENERAL ELECTRIC, A/K/A GE AVIATION AND COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, CLC

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the Western District of Kentucky

_____

## PLAINTIFF-APPELLANT'S BRIEF ON APPEAL
_____

Austin P. Vowels
Vowels Law PLC
126 North Main Street
P.O. Box 2082
Henderson, Kentucky 42419-2082
Telephone: (270) 831-0805

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS..............................................................................ii

TABLE OF AUTHORITIES........................................................................iv

STATEMENT ON ORAL ARGUMENT.................................................vii

I.      JURISDICTIONAL STATEMENT...............................................1

II.     STATEMENT OF ISSUS PRESENTED FOR REVIEW............................1

III.    STATEMENT OF THE CASE......................................................2

IV.     SUMMARY OF ARGUMENT...................................................21

V.      ARGUMENT...........................................................................23

        A.      SUMMARY JUDGMENT STANDARD....................................23

        B.      THE DISTRICT COURT ERRED BY FAILING TO
                RECOGNIZE NUMEROUS FACTS AND GENUINE ISSUES
                OF MATERIAL FACT...............................................................24

        C.      WALDEN WAS QUALIFIED FOR THE PROMOTION AS A
                MATTER OF LAW OR THERE ARE GENUINE ISSUES OF
                MATERIAL FACTS RELATED TO THIS ISSUE………........29

                1.      Walden was qualified for the job; passing a test was not a
                        qualification…………………………………........................30

                2.      Walden passed the December 2018 Test………....................33

                3.      Crowley, a competing younger candidate, never actually passed
                        the testing for the January 2019 Job Posting and further, did not
                        meet the minimum qualifications by holding a certificate or five
                        years of experience…………………………………….…36

4.      GE's and CWA's arguments related to qualifications should fail based upon the summary judgment standard…………………37

D.      WALDEN WAS NOT TREATED FAIRLY BY CWA…...........36

E.      WALDEN CAN PROVE THAT HE WAS QUALIFIED FOR THE JOB AND THAT A SIMILARLY SITUATED PERSON NOT PART OF A PROTECTED CLASS WAS AWARDED THE JOB……………….......................................................................40

F.      GE HAS NO LEGITIMATE NON-DISCRIMINATORY BASIS FOR SELECTING ITS TOOLMAKERS………………..............43

G.      GE'S ALLEGED REASON (THE TESTING) IS A PRETEXT FOR AGE DISCRIMINATION……………...............................44

H.      THERE IS NO ISSUE PRECLUSION RELATED TO THE NLRB CASE ……………………………………...............................46

I.      WALDEN'S CLAIM RELATED TO VIOLATION OF SECTION 301 OF THE NATIONAL LABOR RELATIONS ACT SHOULD SUCCEED ON THE MERITS……………...............................48

J.      THE COURT SHOULD HAVE ALLOWED WALDEN TO SUR-REPLY TO GE'S REPLY SINCE GE INCLUDED NEW EVIDENCE WITH ITS REPLY……………………………...50

VI.    CONCLUSION...........................................................................52

CERTIFICATE OF COMPLIANCE.......................................................53

CERTIFICATE OF SERVICE................................................................54

ADDENDUM (designating relevant District Court Documents)............................55

TABLE OF AUTHORITIES

Cases:                                                                                              Page

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………22

*Anthony v. BTR Auto. Sealing Sys*, 339 F.3d 506, 515 (6th Cir. 2003)…...............3,4

*Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 311 (6th Cir. 2019)…...24

*Best v. James*, No. 3:20-CV-299-RGJ, 2023 U.S. Dist. LEXIS 4180, at *3-4 (W.D. Ky. Jan. 10, 2023)…………………………………………………………….51

*Bormuth v. Cty. Of Jackson*, 870 F.3d 949, 503 (6th Cir. 2017)(en banc)………..23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………....23

*Charles v. Print Fullfillment Servs., LLC*, 2015 U.S. Dist LEXIS 132517 (W.D. KY Sep. 30, 2015)……………………………………………………………3,4

*Davis v. Siemens Med. Sols. USA, Inc*., 399 F. Supp. 2d 785, 792 (W.D. Ky. 2005)…………………………………………………………………...…32

*Davis v. Univ. of Louisville Physicians, Inc.*, No. 3:19-CV-849, 2021 WL 5452163, at *9 (W.D. Ky. Nov. 22, 2021)………………………………………………31

*DeShetler v. FVC US, LLC,* 790 Fed. App'x 665, 669 (6th Cir. 2019)……...…7, 37

*E.E.O.C. v. Prevo's Family Market*, 135 F.3d 1089, 1093 (6th Cir. 1998)……..…22

*Frear v. PTA Indus.*, 160, 103 S.W.3d 99 (U.S. 2003)…………………………...32

*Garrison v. Gambro, Inc.*, 428 F.3d 933, 937–38 (10th Cir. 2005)……...……31,42

*Hank v. Great Lakes Constr. Co.*, 790 Fed. Appx. 690, 701 (6th Cir. 2019)…..7, 36

*Highfill v. City of Memphis*, 425 F. App'x 470, 473 (6th Cir. 2011)………….31,42

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986)……....……..23

*Olchowik v. Sheet Metal Workers' Int'l Assoc.*, 875 F.2d 555, 557 (6th Cir. 1985)………………………………………………………………...……46

*Otto v. City of Newport*, No. 12-19-DLB-CJS, 2013 WL 5743909, at \*4 (E.D. Ky. Oct. 23, 2013)………………………………………………………………31

*Smith v. City of Toledo, Ohio*, 13 F.4th 508, 515 (6th Cir. 2021)…………...…….42

*Wendy Harper v. Terry Elder, Brad Conaway and Webster County, Kentucky*, Case No. 19-5475 (6th Cir. Mar. 4, 2020)…………………………………..……29

Statutes:

28 U.S.C. § 1291........................................................................................................1

29 U.S.C. § 621........................................................................................................1

Section 301 of the National Labor Relations Act…………………………………47

Regulations, Rules and Other Referenced Materials:

11 Richard A. Lord, *Williston on Contracts* § 30:6 (4th ed.)……………………..32

Federal Rule of Appellate Procedure 4(a)……………............................................1

Federal Rule of Civil Procedure 56(c)………………………………….. …….22

## <u>STATEMENT ON ORAL ARGUMENT</u>

  Appellant requests oral argument and believes it will be beneficial in assisting the Court in understanding this appeal and the situation from which it arises.

## I.    JURISDICTIONAL STATEMENT

Appellant-Plaintiff, Michael Walden (hereinafter "Walden"), filed a complaint in 2019 and amended complaint in 2020 for age discrimination under the federal and state age discrimination laws (Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. sections 621 et sequential) and under Section 301 of the National Labor Relations Act. These claims invoked Federal Question Jurisdiction. In addition, the Appellee-Defendants are entities outside Kentucky, while Walden is a Kentucky resident claiming more than $75,000.00 in damages, and accordingly diversity jurisdiction was also appropriate on the state claim. The United States District Court for the Western District of Kentucky granted Appellee-Defendants General Electric International, Inc., a/k/a General Electric, a/k/a GE Aviation (hereinafter "GE")'s and Communications Workers of America, AFL-CIO, CLC (hereinafter "CWA")'s motion for summary judgment. Walden appealed to this Court as allowed as a matter of right under Federal Rule of Appellate Procedure 4(a). This Court has jurisdiction to review the District Court's decision under 28 U.S.C. Section 1291.

## II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

A.    Whether the District Court properly granted GE Summary Judgment by finding there were no genuine issues of material fact for a jury to resolve.

1

B.    Whether Walden is entitled to a finding by law that he was qualified for the job considering that the CBA contractually obligated GE to give him the promotion.

## III.    STATEMENT OF THE CASE

Walden is an employee of GE which operates a manufacturing facility in Madisonville, Kentucky. After events occurring related to GE's job postings for toolmaker positions in December 2018 and January 2019, from which Walden was denied a promotion to a toolmaker position with GE after being guaranteed such based upon his seniority and the collective bargaining agreement (hereinafter "CBA"), Walden brought this federal case against GE for age discrimination and against GE and CWA for violations of Section 301 of the National Labor Relations Act- for both GE's breach of the CBA and CWA for failing in its duty to provide him with fair representation.

GE's and CWA's motions for summary judgment should have been denied by the District Court and the case should have proceeded to trial because there were genuine issues of material fact to be resolved by the jury. Now, on appeal, this Court should reverse certain findings since they are unsupported and vacate others because there are genuine issues of material fact for a jury to decide.

Case: 24-5141    Document: 17    Filed: 04/25/2024    Page: 9

**Age Discrimination Claim**

Walden meets his prima facie age discrimination case by proving that (1) that he is a member of a protected class; (2) that he applied for, and did not receive, a job; (3) that he was qualified for the job; and (4) that a similarly-situated person who was not in the plaintiff's protected class received the job. *Anthony v. BTR Auto. Sealing Sys*, 339 F.3d 506, 515 (6th Cir. 2003).

Walden was older than 40 years and thus in a protected class. *Charles v. Print Fullfillment Servs., LLC*, 2015 U.S. Dist LEXIS 132517 (W.D. KY Sep. 30, 2015); ((Doc. 113-4, PageID1326) (testifying that he was born in 1955)). He bid for a job promotion at GE in response to GE's December 2018 job posting and GE's January 2019 job postings. (Doc. 113-4, PageID1340-41, 1344-45). He was qualified for the job, as he has more than the five years of requisite experience listed as the qualifications for the job. (Doc. 113-2, PageID1313 (job posting); Doc. 113-3, Page ID 1314 (resume)). Further, as the most senior candidate applying for the job, GE was obligated to award it to him under the CBA. (Doc. 113-4, PageID 62 (testifying he began working at GE in 2011); Doc. 113-7, PageID1620-21 (showing those hired in place of Walden were less senior); Doc. 113-1, pageID 1286 (the collective bargaining agreement language)). Last, similarly situated persons, who were substantially younger, received the job over Walden. (Doc. 113-7, PageID1620-21 (showing ages of those awarded); Doc. 113-

14, PageID1704 (job award posting); Doc. 113-4, PageID1338-39 (testifying about job awards)); *Charles v. Print Fullfillment Servs., LLC*, 2015 U.S. Dist LEXIS 132517 (W.D. KY Sep. 30, 2015) (explaining it is sufficient to show that a replacement is substantially younger).

The *prima facie* case establishment creates a rebuttal presumption of discrimination and requires GE to articulate some legitimate, nondiscriminatory reason for taking the challenged action. *Anthony v. BTR Auto. Sealing Sys*, 339 F.3d 506, 515 (6th Cir. 2003).

Although GE claims it did not promote Walden because he did not pass the written test given related to the jobs posted in December 2018 and January 2019, GE's evidence to prove this issue is not reliable. First, based upon GE's own job postings and the CBA, there was no requirement for Walden to take or pass a test. (Doc. 113-2, PageID1313; Doc. 113-13, PageID1702-03). Second, Walden testified that Tim Riggs (hereinafter "Riggs"), the GE management in charge of this hiring process, insinuated he passed the test when Riggs required Walden to turn it in while refusing to address Walden's questions and concerns raised before finishing the test. (Doc. 113-4, PageID1384). Third, Riggs' claim that a person had to score an 85% on the test to pass is unsupported. That claim is not supported by any physical evidence, and Riggs is the only one to testify regarding it. Riggs

admitted what he alleged as the score requirement is not written anywhere. ((Doc. 113-6, PageID1571). Also, no one else knew what score was required.

Fourth, Riggs told Walden the other candidates in December 2018 missed four questions, (Doc. 113-4, PageID1464), which on a 25-question test, would result in a score of only 84%. Fifth, comparing answers to the answer key, many candidates that allegedly passed the test had more than three answers that do not match and thus, assumingly, they missed those questions and would fail under Riggs alleged required score. (Doc. 113-7, PageID1620-21 (showing candidates awarded toolmaker jobs); Doc. 113-17, PageID1712-1717 (answer key); Doc. 113-16, PageID1707-11 (Bryant's test); Doc. 113-18, PageID1718-22 (Brown's Test); Doc. 113-19, PageID1723-26 (Rushing's test); Doc. 113-22, PageID1769-71 (Christian's Test); Doc. 113-23, PageID1772-75 (Martin's Test); Doc. 113-24, PageID1776-78 (Baber's Test); Doc. 113-25, PageID1779-82 (Ray's Test)).

Sixth, one candidate that was awarded the job over Walden did not even remember taking a portion of the test and further, could not verify that some of the handwriting on the test was his. Thus, the proof supports the position that he did not take the last five questions of the test. Thus, he could not have scored better than an 80%. ((Doc. 113-10, PageID1659, 1666). Seventh, GE seemingly hired someone over Walden that did not even meet the minimum requirements described in the job posting. (Doc. 113-14, PageID1704; Doc. 113-33, PageID1882-87).

Eighth, it is apparent that GE commonly played with the tests and the results to select the candidates it wanted, which is obviously not nondiscriminatory or legitimate.[1] Ninth and significantly, GE responded to a younger member's mirroring grievance more favorably than it responded to Walden, providing direct evidence of age discrimination. ((Doc. 113-7, PageID1620-21 (showing candidates awarded toolmaker jobs ages); Doc. 113-29, PageID1853; Doc. 113-30, pageID 1858).

If the Court somehow accepts that GE had a legitimate, nondiscriminatory reason for its actions, which it should not, Walden can still prevail by showing that GE's alleged legitimate, nondiscriminatory reason was pretext for discrimination. *Anthony v. BTR Auto. Sealing Sys*, 339 F.3d 506, 515 (6th Cir. 2003). Here, the same reasons GE's actions should not be considered legitimate and nondiscriminatory listed before also go towards showing that such were pretext- and based upon that, Walden should prevail in his age discrimination claim. The most direct proof that GEs actions have been pretext for age discrimination is the

---

[1] As described in the factual section *infra*, GE administered the other two candidates for the December 2018 job posting a test with five less questions on it first. Then, it added five questions before giving the test to Walden. Last, it claims it brought back the other two candidates to have them take the additional five questions, but one of those candidates had no recollection of that. Further, for the testing in response to the January 2019 test results, as described in the factual section *infra*, GE changed the scoring method/passing score requirement three times to enable Crowley to be awarded the job with an average score of only 69.5%.

6

fact that it gave a younger employee a different grievance response that was more favorable and enabled that employee to get the job, as discussed more *infra*.

**Violation of Section 301 of the National Labor Relations Act**

To succeed on a Section 301 claim, Walden must show both that GE breached the CBA and that CWA breached it duty of fair representation. *Hank v. Great Lakes Constr. Co.*, 790 Fed. Appx. 690, 701 (6th Cir. 2019). GE breached the CBA by not awarding Walden the job despite him meeting the qualifications and being the most senior candidate. (Doc. 113-4, PageID1376 (testifying he began working at GE in 2011); Doc. 113-7, PageID1620-21 (showing those hired in place of Walden were less senior); Doc. 113-1, pageID 1286 (the collective bargaining agreement language)).

A Union breaches its duty of fair representation when its acts or omissions are arbitrary, discriminatory, or in bad fair. *DeShetler v. FVC US, LLC,* 790 Fed. App'x 665, 669 (6th Cir. 2019). CWA failed to fairly represent Walden by not properly assisting him in filing a grievance, not adequately pursuing his grievance, telling him grievance was futile, working with GE to change the testing procedures while Walden was going through the application process, not communicating well with Waldon on the status of his grievance, not pursuing arbitration, providing better representation to another union member in a similar situation (Brian King), and noticing that the other union member got a better result from his grievance but

7

taking not action related to such. (Doc. 113-4, PageID1383-84; Doc. 113-27, PageID1803; Doc. 113-6, PageID1593; Doc. 113-29, PageID1853; Doc. 113-30, PageID1858; Doc. 113-21, PageID1761).

Accordingly, GE and CWA's motion for summary judgment on the claim related to the Violation of Section 301 Claim should have been denied.

## MORE RELEVANT FACTS

Walden was born in 1955. (Doc. 113-4, PageID1326). From 1977 through 1996, Walden worked as a "tool and die maker" for Firestone Steel Products/Accuride Corp. (Doc. 113-3, PageID1314). Following that, from 1996 through at least 2018, he continued to do tool and die maker work for Tri-State, Inc.. (Doc. 113-3, PageID1314). Additionally, in August 2011, Walden began working for GE as a "Flexible Machine Operator II." (Doc. 113-5, PageID1539). He continues in this role now with GE. (Doc. 113-4, PageID1474-75). He is a member of the union, CWA. (Doc. 113-4, PageID1460).

The CBA in place in December 2018 and January 2019 dictated that the most senior member meeting the minimum qualifications for a position applied for would be awarded said position. (Doc. 113-1, PageID1285-86). As Andrew Blades (hereinafter "Blades"), the union president at the relevant time, testified, minimum job qualifications are posted with the job postings. (Doc. 113-21, PageID1757).

8

On Thursday, December 6, 2018, GE posted a job titled "Toolmaker" explaining that two would be hired for such on first shift. The only qualifications listed for such were that one have "Graduate[d] of GE approved Tool & Die Apprenticeship Program or 5 years of Tool and Die job experience." (Doc. 113-2, PageID1313). Walden applied for this position. (Doc. 113-4, PageID1469). Nathan Bryant (hereinafter "Bryant") and Brad Brown (hereinafter "Brown") also applied for the position. (Doc. 113-6, PageID1563).[2]

Both Bryant and Brown were born in the 1980s and thus significantly younger than Walden. Both also had less seniority than Walden. (Doc. 113-7, PageID1620). Both were promoted to toolmaker positions over Walden in relation to the December 2018 job openings. (Doc. 113-6, PageID1563). GE alleges that Bryant and Brown were promoted over Walden due to Walden failing a written test.

**Administration of Test in December 2018**

Riggs works for GE in management. In December 2018, he administered written tests for GE's toolmaker positions. Riggs claimed he got job bids from Walden, Bryant, and Brown at the same time. (Doc. 113-6, PageID1567-68). However, Riggs testified he administered the 20-question written test to Bryant

---

[2] There are two Brad Brown's associated with this case. One was awarded the job over Walden in December 2018 and he is referred to as "Brown". The other was already a toolmaker and held an e-board position with CWA. He will be referred to as "Skilled Trades Brown."

and Brown first. (Doc. 113-6, PageID1564, 1568). After, Riggs claims he and Skilled Trades Brown (See footnote above) changed the test to include five additional questions because there was a rumor that the answers to the test were being passed around. (Doc. 113-6, PageID1564-66). Skilled Trades Brown had no recollection of that occurring. He testified that he was not involved with changing the test to add five questions before Walden being tested. (Doc. 113-27, PageID1797-98). Riggs claims he then administered the new 25-question test to Walden. (Doc. 113-6, PageID1565; Doc. 113-9, PageID1641). Then, at some point, Riggs claims Bryant and Brown were brought back for a second sitting where they completed the additional five written questions. (Doc. 113-9, PageID1641; Doc. 113-6, PageID1571).

**Walden's Recollection of the December 2018 Test**

Riggs grabbed Walden in the middle of shift to ask him to take the test. (Doc. 113-4, pages 53-54). Walden explained that he took the test in Riggs' office with no instructions given. During his testing, Riggs and the Plant Manager had a conversation in his presence. (Doc. 113-4, PageID1368). After Walden had completed most of his test, he and Riggs had a conversation about whether others had used a calculator and whether he was able to use a calculator or not- and Riggs agreed not to hold his answer to one question against him because he did not use a calculator while others were given that opportunity. (Doc. 113-4, PageID1369).

The same conversation or a second one was also about whether Walden was able to use his phone to look up items, which apparently Riggs expected him to do. Riggs also told Walden he had gotten the answer to the Pythagorean theorem question correct, when he had not. (Doc. 113-4, PageID1370). As Walden was finishing his test, he closed it and planned to ask Riggs some questions before completing and submitting it. Before he could, those conversations about the calculator, phone, and questions on the Pythagorean theorem ensued. Those conversations ended with Riggs telling Walden "it's not going to be an issue," looking at the clock, and then telling Walden he was supposed to be in a meeting (outside of his office) 15 minutes ago, and that he needed to go. (Doc. 113-4, PageID1371). Walden took Riggs' insinuation that "it's not going to be an issue" to mean that he passed the test. (Doc. 113-4, PageID1371-72).

**Bryant's Recollection of the December 2018 Test**

Bryant explained that Riggs gave him the test. Bryant testified that his test was taken all in one sitting. (Doc. 113-10, PageID1659). **He did not recall being called back to take an additional five questions written test <u>at all</u>.** (Doc. 113-10, PageID1659). Bryant **could <u>not</u> verify some of the handwritten answers on his test were his handwriting**. (Doc. 113-10, PageID1666-67).

**Bryant's Test**

Bryant's test reflects that he "missed 1" at the top of it. (Doc. 113-16, PageID1707). A "-1" is reflected on page 5, question number 23. (Doc. 113-16, PageID1711).[3] Bryant's answer for question number 7 is "anneal" but the answer key reflects the correct answer was actually "yes". (Doc. 113-17, PageID1712; Doc. 113-16, PageID1707). The answer to Bryant's question number 10 is "Heat" but the answer key reflects the answer to this question is "Draw it Back". (Doc. 113-17, PageID1712; Doc. 113-16, PageID1708). The answer written on Bryant's question number 24 is "800-1000" but the answer key reflects the correct answer was actually "800-1500". (Doc. 113-17, PageID1715; Doc. 113-16, PageID1711). The answer written question number 25 is ".2501" but the answer key reflects the correct answer was actually ".2507". (Doc. 113-17, PageID1715; Doc. 113-16, PageID1711). So, it appears Bryant missed at least five questions, based upon a comparison with the answer key.

Further, the answer to Bryant's question 4 reads "Center/Left" and the two words appear to be in different handwriting- particularly the "e" in each work appears different- the word "Left" is also in a lighter font. (Doc. 113-16, PageID1707).[4] The answer written on question 12 reads "Make sure spindle is

---

[3] For that answer, Bryant appears to have attempted to name only four geometric tolerances after the question instructs him to name eight.

[4] The answer key reflects that the answer was "left side" so it makes since that a grader may have put the "/" to mark the "center" answer as incorrect and then

clean / ring test" and the two words appear to be in different handwriting-particularly the "e" in each word appears different- the word "ring test" is also in a lighter font. (Doc. 113-16, PageID1708).[5] The answer written to question 20 also appears to have "per side total .020" written in, in different handwriting, so that it will match the answer key. (Doc. 113-16, PageID1710; Doc. 113-17, PageID1715).[6]

**Other Information About the Test Administered in December 2018**

Riggs claimed GE has been using the 20-question written test since 2016. Riggs claimed the Union agreed to it and helped create it. Riggs claimed that Skilled Trades Brown (see footnote 2) voted the test in and agreed that it should be taken in 2016. (Doc. 113-6, PageID1553). Skilled Trades Brown, however, did not recall the same. (Doc. 113-27, PageID1796).

With respect to the December 2018 written test, Riggs initially informed Walden that "[Brown and Bryant] missed four, [Walden] missed six." (Doc. 113-4, PageID1464). Later, GE claimed Brown made a perfect score, (Doc. 113-12,

---

written in the correct answer. (Doc. 113-17, PageID1712; Doc. 113-16, PageID1707).

[5] The answer key reflects that the correct answer was "ring test" so it makes since that a grader may have put the "/" to mark the "Make sure spindle is clean" answer as incorrect and then written in the correct answer. (Doc. 113-17, PageID1712; Doc. 113-16, PageID1707).

[6] There appears to be a high probability that a jury could conclude that Bryant missed eight questions based upon these discrepancies.

PageID1704). However, Brown's test has answers different from those on the answer key in response to questions 3, 6, 10, 12, 15, 19, 20, 23, 24, and maybe more. (Doc. 113-18; Doc. 113-17, PageID1712).[7] Prior testers, who allegedly passed the test when it was only 20 question also had answers different from those on the answer key in response to three or more questions each.[8]

**Passing Grade for the December 2018 Test**

There is **no documentation** other than claims made after the scoring of Walden's test to the EEOC, related to what constitutes a passing test result on the

---

[7] When Brown was asked to explain the test, he explained, "It was just a handwritten test. Maybe 20 questions, I guess. Short-answer test about tool making, obviously." (Doc. 113-11, PageID1682). Brown explained that Riggs gave him the test. He could not recall when he got his grade either. (Doc. 113-11, PageID1684). He explained he was given notice of the test on third shift while working and instructed to take it at 7:00am when first shift began. (Doc. 113-11, PageID1683). Brown did **not** mention getting called back for an additional five questions **until** specifically asked about it. (Doc. 113-11, PageID1686). He could not remember how many days later he took the additional questions but thought it was a short amount of time later. (Doc. 113-11, PageID1686).

[8] Mike Rushing, who allegedly passed the test when it was only 20 questions, has answers different from those on the answer key in response to questions 3, 10, 20, and maybe more. (Doc. 113-19; Doc. 113-17, PageID1712). Kevin Christian, who allegedly passed the test when it was only 20 questions, has different answers from those on the answer key in response to questions 1, 3, 10, 15, and maybe more. (Doc. 113-22; Doc. 113-17, PageID1712). David Martin, who allegedly passed the test when it was only 20 questions, has answers different from those on the answer key in response to questions 10, 15, 18, and maybe more. (Doc. 113- 23; Doc. 113-17). Daniel Barber, who allegedly passed the test when it was only 20 questions, has answers different from those on the answer key in response to questions 4, 10, 13, 15, 20 and maybe more. (Doc. 113-24; Doc. 113-17, PageID1712). Keith Ray, who allegedly passed the test when it was only 20 questions, has answers different from those on the answer key in response to questions 3, 5, 10, 11, 12, 18, 19, 20, and maybe more. (Doc. 113-25; Doc. 113-17, PageID1712).

December 2018 test administered.[9] Riggs originally told Walden that the other candidates missed four questions. (Doc. 113-4, PageID1464). GE changed that position. Its new position has been that Bryant missed only one question and Brown got a perfect score. (Doc. 113-12, Page ID 1704).

Riggs claimed that a person had to score 85% on the test to pass or not miss more than three questions. But, he admitted that this alleged policy was not written down anywhere. (Doc. 113-6, PageID1571). No one else new about it either.[10] More specifically, GE claimed that Walden scored an 80% and missed four questions, just below the passing threshold. (Doc. 113-12, PageID1704).

**January 2019 Job Postings**

On January 30, 2019, GE posted another two toolmaker job postings. The minimum qualifications listed were the same as the December 2018 posting. (Doc. 113-13). Walden applied.

---

[9] Riggs testified that he grades all of the tests and does not record the scores anywhere. He simply lets people know if they passed or failed and reports who gets the position to Human Resources. (Doc. 113-6, PageID1594).

[10] For the December 2018 written test, Brown claimed the passing score for the test was common knowledge. But, he could not remember what it was. (Doc. 113-11, PageID1685). Skilled Trades Brown (see earlier footnote), who Riggs explained assisted in creating the test and answer key, did not recall what a passing score was either. (Doc. 113-27, PageID1796). Riggs claimed that no one had ever been awarded a toolmaker position after having missed more than three questions. (Doc. 113-6, PageID1593). GE's attorney made the same claim to the EEOC (presumably with Riggs' input).

15

**Testing for the January 2019 Job Postings**

According to Riggs, for these positions posted in January 2019, GE and CWA agreed to require the candidates to take and pass a written test and a hands-on test administered at local community colleges. (Doc. 113-6, PageID1573-74). Riggs claimed the CWA E-board agreed to this change. (Doc. 113-6, PageID15 1574). For that test, Riggs claims a 70% would be required to pass it but he did not recall if CWA ever agreed to such. (Doc. 113-6, PageID1575). Riggs claimed that GE and CWA agreed that the two tests of the test should be averaged to determine whether someone hit the 70% passing score. (Doc. 113-6, PageID1577).

Skilled Trades Brown verified that CWA agreed that a person should pass a written and hands on test administered at the local community colleges. (Doc. 113-27, PageID1798-99). However, he explained that originally, the tests were set up so that before taking the hands-on test, one would first have to pass the written test. (Doc. 113-27, PageID1799). Skilled Trades Brown did verify that the E-Board discussed averaging the scores rather than require passage of one before allowing the taking of another, but he was not sure if the Union agreed to such. (Doc. 113-27, PageID1800).

Brian King (hereinafter "King") also applied for the January 2019 job posting. King was born in 1971 and significantly younger than Walden, though he had more seniority with GE since he had worked there longer. (Doc. 113-7,

16

PageID1620). King was told he had to pass the written test. Walden assumed he had to pass it too. Walden did not know what passing the written test meant in terms of score when he took the test. (Doc. 113-4, PageID1408-09). He was told by Basham, his Union Steward, that a 75% was passing. (Doc. 113-4, PageID1410). Only after GE had the grades on the written test in-hand did he learn that a 70% would be considered passing. (Doc. 113-4, PageID1410).

Riggs denied any decision to disregard sections of the written test after the first set of tests were administered for the January 2019 job postings. He claimed the decision to disregard sections was made prior to the testing ever taking place. (Doc. 113-6, PageID1580). Skilled Trades Brown explained that he, as an E-Board member, was not involved with the decision to throw out portions of the written test administered by the community college. (Doc. 113-27, PageID1800). Nevertheless, at least five candidates took even the disregarded portion of the written test and were given an "original score". (Doc. 113-20, PageID1727).

Keith Crowley (hereinafter "Crowley") was born in 1969, was younger than Walden, has less seniority than Walden, and seemingly had no toolmaker experience to meet the minimum qualifications. (Doc. 113-7, PageID1620; Doc. 113-33). Disregarding the two sections of the written test boosted Crowley's written score from 72% to a 75% and boosted his overall average score from a 68% to a 69.5%. (Doc. 113-15). Crowley's combined average scores apparently

17

were enough to be considered passing as he was awarded the job in April 2019. (Doc. 113-14). Walden did well on the written test, passing with an 87%. (Doc. 113-20, PageID1729). But, he failed the hands-on test. (Doc. 113-31, PageID1863). Walden was not awarded the job.

**Walden's Representation by the Union**

Walden approached Basham, his Union Steward, to assist him with filing a grievance after he was denied the promotion in December 2018. (Doc. 113-4, PageID1464). Basham approached Skilled Trades Brown about the issue. (Doc. 113-27, PageID1802). Walden explained that he was looking for help in determining if there was contract violation from his union representatives. (Doc. 113-4, PageID1384). Skilled Trades Brown told him he did not know any. (Doc. 113-4, PageID1384). Walden felt shunned and ignored. (Doc. 113-4, PageID1398-99). Skilled Trades Brown testified that he immediately told Basham that Walden's grievance was futile. He suggested Walden re-take the test. (Doc. 113-27, PageID1803).

Walden eventually filed a grievance in March 2019 after the January 2019 job posting testing; Brian King filed a mirroring grievance around the same time. (Doc. 113-29; Doc. 113-4, PageID1451, 1499; Doc. 113-30, Page ID 1856). Even

after filing his grievance, Walden was ignored.[11] Around the same time, CWA members were meeting with King. (Doc. 113-4, PageID1420). Blades also "dumped" Walden's grievance onto another union representative, Frank Owens.

Owens was going to do the third step process. (Doc. 113-4, PageID1420). Walden attempted to prepare Owens for the meeting by talking with him. But, Owens took no notes. During the third step process, Owens never even questioned where the alleged 85% passing score came from considering that it appeared to have been "pulled out of the air." (Doc. 113-4, PageID1420). Walden and King had discussed filing a joint grievance, but CWA would not do it. (Doc. 113-4, PageID1421). King, not a Union Representative, was the one who filled Walden in on the appropriate section of the contract that GE violated by not awarding him the job. (Doc. 113-4, PageID1420).

Brian King's grievance, however, had a different outcome altogether. Like Walden's, GE denied it at the first step. However, the Union appealed that decision. King's grievance settled on August 7, 2019, when GE decided to allow him to retake his test and "be given verbal feedback on areas he needs

---

[11] He could not get Blades, CWA president, to return a call. (Doc. 113-4, PageID1401). Eventually, Blades screamed him out of an e-board meeting. (Doc. 113-4, PageID1401). Walden could not determine the status of his grievance when he would check on it. (Doc. 113-4, PageID1501). No one from the Union ever discussed arbitration with him. (Doc. 113-4, PageID1501). While Walden was hounding the Union to get the second step of the grievance completed, he got excuses from his union representatives as to why nothing was getting done.

improvement from his previous test." (Doc. 113-30, PageID1858). King was given that opportunity and took advantage of such. (Doc. 113-4, PageID1492). Riggs met with King and his union representative, Mike Adams, in his office. They went over the test results. It showed King what he missed and what the correct answers were. (Doc. 113-6, PageID1602).  Riggs claimed Walden would have been given this opportunity too. (Doc. 113-6, PageID1595). But, Walden was not informed of the same in response to his grievance. The response explains that Walden was permitted to test again as a result of his grievance, he was given no opportunity for verbal feedback on areas he needed improvement, according to the grievance response from GE. (Doc. 113-29, PageID1853). King was able to pass the test his next time around and get the toolmaker job that was posted in September 2019. (Doc. 113-4, PageID1349; Doc. 113-6, PageID1604).

Blades explained that Basham would have filed the grievance for Walden but that he would have delt with it at Second Step. Though, he did not recall what happened to it at Second Step. (Doc. 113-21, Page 27). Blades explained that if Walden was not satisfied with the answer at Second Step, the grievance would go to Third Step. Blades was sure there was a Third Step meeting. But, he could not remember what happened there either. Though, Blades knew the Union did not take Walden's grievance to arbitration.  (Doc. 113-21, PageID1759). He explained the Union's board discussed pushing arbitration "but [Blades] believe[d] [Walden]

20

may have filed Labor Board Charges as well." Blades followed that statement with the fact that the Union "denied arbitration." (Doc. 113-21, PageID1759). Blades later claimed the arbitration was not pursued because they thought it was the same as the National Labor Board Charge being pursued. (Doc. 113-21, PageID1766).

Blades recalled King's grievance. He explained that he looked at it for King. (Doc. 113-21, PageID1761). He also specifically recalled that GE answered King's grievance differently than Walden's. But, he could not remember how so. (Doc. 113- 21, PageID1762).

**September 2019 Job Postings**

On September 19, 2019, GE posted another toolmaker position. On this job posting, it added a note that once a candidate "meets the minimum requirements they will be required to take two tests (written and hands on demonstration) and successfully score a combined 70% minimum in order to be selected for this position." (Doc. 113-26).

## IV.   SUMMARY OF ARGUMENT

CWA and GE's motions for summary judgment should have been denied.

CWA argued that Walden's case should be dismissed on summary judgment because it failed as a matter of law since he did not meet the minimum qualifications required for the position since he did not pass the test required to be awarded the toolmaker position. CWA secondarily argued that Walden's claim

should be dismissed because the Union treated him fairly, determined that his grievance would have little chance for success, and thus, acted reasonably. (Doc. 107-, PageID 855).

GE argues that Walden cannot meet his prima facie age discrimination claim because he cannot prove he was qualified for the job or that a similarly situated person not in the his protected class received the job. (Doc. 108, PageID1100-1103). GE Further argues that it has a legitimate nondiscriminatory basis for its toolmaker selections. (Doc. 108, at 1103). GE further argues that Walden cannot prove GE's decision was pretextual. (Doc. 108, PageID1103-1106). Further, GE argues that Walden's NLRB decision precludes his contentions related to his Hybrid LMRA claim. (Doc. 108, PageID1108-10). Last, GE argues that Walden's LMRA Claim fails on the merits because its time barred, he did not qualify as a toolmaker, and he failed to exhaust his claim (Doc. 108, PageID1110-12).

Each of those arguments should have failed. Each will be addressed in more detail in turn. Most significantly, there are genuine issues of material facts existing which could easily allow for a jury to rule in Walden's favor on each and every issue necessary for him to succeed on both claims.

## V.   ARGUMENT

## A.   SUMMARY JUDGMENT STANDARD

Summary Judgment shall be granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *E.E.O.C. v. Prevo's Family Market*, 135 F.3d 1089, 1093 (6th Cir. 1998); Fed. R. Civ. P. 56(c). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A fact is material if its resolution will affect the outcome of the lawsuit. *Id.* All factual inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact as an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party satisfies the burden, "the burden shifts to the nonmoving party to set forth specific facts showing a triable issue." *Matsuhita Flee. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

This Court reviews grants of summary judgment *de novo*. *Bormuth v. Cty. Of Jackson*, 870 F.3d 949, 503 (6th Cir. 2017)(en banc). It should draw all

reasonable inferences in Walden's favor. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 311 (6th Cir. 2019).

## B.   THE DISTRICT COURT ERRED BY FAILING TO RECOGNIZE NUMEROUS FACTS AND GENUINE ISSUES OF MATERIAL FACT.

Walden's detailed arguments on each issue will follow this section but prior to doing so, it is worthwhile to simply point out a few very significant genuine issues of material fact that that the District Court failed to recognize in its decision, which may not be the only genuine issues of material fact, resulting in its error in granting summary judgement.

The first error made by the Court was its finding that "GE had, with the Union's consent, required employees to pass a written test to qualify for the toolmaker position since 2016." (Doc. 128, PageID2150). Both the CBA and the job postings from GE refute this finding. (Doc. 113-1, PageID1253; Doc. 113-2, PageID1254; Doc. 113-13, PageID1702). Even more, the only one to claim that the Union consented to requiring the test was Riggs. There are multiple other instances where his claims were unverifiable by other witnesses (Walden, Brown, and Bryant), leading one to seriously question whether anything he testified about could be believed. Walden maintains that the unambiguous CBA and job postings listing the requirements lend for a finding by law that testing was not required. However, even if that were not the case, there would be a genuine issue of material

24

fact on that issue and the inferences should be made in Walden's favor to resolve it when dealing with a motion for summary judgment. It is also worth noting here that before CWA changed its position in this lawsuit, it actually assisted Walden (albeit haphazardly and late) with filing a grievance alleging that Walden should have been awarded the job based upon the CBA. So, its position now, that he was not qualified, is highly questionable.

The second error by the District Court was its finding that "The test was twenty questions long, and the passing score was 85 percent, or a maximum of three incorrect answers." (Doc. 128, PageID2150). That finding that an 85 percent was required to pass was contradicted by (1) Riggs first insinuating that Walden passed the test, (2) Riggs later informing Walden that "[Brown and Bryant] missed four, [Walden] missed six,"[12] (3) the fact that Brown's test has answers different from those on the answer key in response to questions 3, 6, 10, 12, 15, 19, 20, 23, 24, and maybe more,[13] [14] (4) Prior testers, who allegedly passed the test having

---

[12] (Doc. 113-4, PageID1464).

[13] (Doc. 113-18; Doc. 113-17, PageID1712)

[14] When Brown was asked to explain the test, he explained, "It was just a handwritten test. Maybe 20 questions, I guess. Short-answer test about tool making, obviously." (Doc. 113-11, PageID1682). Brown explained that Riggs gave him the test. He could not recall when he got his grade either. (Doc. 113-11, PageID1684). He explained he was given notice of the test on third shift while working and instructed to take it at 7:00am when first shift began. (Doc. 113-11, PageID1683). Brown did **not** mention getting called back for an additional five questions **until** specifically asked about it. (Doc. 113-11, PageID1686). He could

answers different from those on the answer key in response to three or more

questions each,[15] and later job postings explaining on a 70% was needed to pass

the test[16].

Really, the only evidence that an 85 percent was required to pass was Riggs'

testimony, wherein he admitted that an 85 percent being required to pass was not

documented anywhere. (Doc. 113-6, PageID1571). The inference to be made

related to this evidence in favor of Walden, the non-moving party, is that Riggs

was not being honest or made up the "required" passing score after Walden took

the test to exclude Walden (after he had already changed the test specifically to

Walden's detriment). The evidence is decently clear GE took similar action with

respect to the January 2019 testing where sections were thrown out and two tests

_____

not remember how many days later he took the additional questions but thought it
was a short amount of time later. (Doc. 113-11, PageID1686).

[15] Mike Rushing, who allegedly passed the test when it was only 20 questions, has
answers different from those on the answer key in response to questions 3, 10, 20,
and maybe more. (Doc. 113-19; Doc. 113-17, PageID1712). Kevin Christian, who
allegedly passed the test when it was only 20 questions, has different answers from
those on the answer key in response to questions 1, 3, 10, 15, and maybe more.
(Doc. 113-22; Doc. 113-17, PageID1712). David Martin, who allegedly passed the
test when it was only 20 questions, has answers different from those on the answer
key in response to questions 10, 15, 18, and maybe more. (Doc. 113- 23; Doc. 113-
17). Daniel Barber, who allegedly passed the test when it was only 20 questions,
has answers different from those on the answer key in response to questions 4, 10,
13, 15, 20 and maybe more. (Doc. 113-24; Doc. 113-17, PageID1715). Keith Ray,
who allegedly passed the test when it was only 20 questions, has answers different
from those on the answer key in response to questions 3, 5, 10, 11, 12, 18, 19, 20,
and maybe more. (Doc. 113-25; Doc. 113-17).

[16] (Doc. 113-26).

26

were averaged after testing was administered to boost Christian's score from a 68% to a 69.5% to allow a 70% and award Christian the job. (Doc. 128, PageID2151). The District Court, however, erroneously, made a different inference by assuming Riggs was honest or truthful, that inference was in favor of the moving party, GE. The District Court found that despite answers not matching the answer key, Riggs just graded the tests leniently, including Walden's, which he graded equally leniently. (Doc. 128, PageID2160). While that an inference one could make from the evidence, it's not the inference the District Court was permitted to make as it was to make all inferences in favor of the non-moving party. A jury could have made the other inference, and thus, summary judgment was not proper because there is a clear genuine issue of material fact.

A third error made by the District Court was its findings that five questions were added to the test after others took it and before Walden took it because "Kevin Christian informed . . . Riggs of a rumor that some employees were sharing the test questions and answers." (Doc. 128, PageID2150). Christian never testified regarding the same. His deposition was not taken during discovery. Further, what the District Court left out of its decision was that Riggs testified Skilled Trades Brad Brown was also party to the decision-making in adding five questions for Walden. (Doc. 113-6, PageID1571). But, Skilled Trades Brad Brown testified and denied any involvement in that scheme. Specifically, he testified "I wasn't

involved in that." (Doc. 113-27, PageID1798). So, Riggs story appears false. No evidence supports Christians' agreement to those facts except hearsay, which the District Court should know better than to accept. Brown testified he was not involved after Riggs claimed he was. The Court should obviously not rely on sheer hearsay and a refuted story to make that determination. The facts are clear that Walden got a special test after two others younger candidates were given an easier test. If a presumption were ever going to apply to an age discrimination case, clearly it would apply there. The reasonable inference for the non-moving party was that Riggs changed Walden's test to exclude Walden from being able to get the job. The District Court's inference that there was a legitimate reason to change the test based upon sheer hearsay and Riggs' refuted story was impermissible for the District Court to make. It should have been left for a jury as the fact-finder as a clear genuine issue of material fact.

A fourth error made by the District Court was its finding that CWA agreed to throw out two sections of the new test that began in January 2019. (Doc. 128, PageID2151). Skilled Trade Brown, CWA's Skilled Trades Representative at the time did not recall being involved in that decision at all. (Doc. 113-27, PageID1800). But, Riggs claimed that the request related to throwing out the sections came from Skilled Trades Brown. (Doc. 113-6, PageID1580). The pattern of Riggs's stories about the happenings in this case not being verified is one that

28

flows consistently throughout the facts in this case. The logical inference to be made from the same is that Riggs was dishonest. But, the District Court made an impermissible contrary inference and instead simply took him at his word, over-and-over, even when there was contrary evidence. Significantly, the Court noted that the person who was awarded the job as a result of the sections being thrown out would not have been had the sections not been thrown out. (Doc. 128, PageID2152).

These four genuine issues of material facts are not the only ones and more will be discussed in the section *supra*. But, these four are clear cut and significant examples of why this Court should not affirm the District Court's decision.

The District Court has been found to have erred in similar circumstances where it has failed to properly construe inferences in the recent past. See, i.e., *Wendy Harper v. Terry Elder, Brad Conaway and Webster County, Kentucky*, Case No. 19-5475 (6th Cir. Mar. 4, 2020). The same should happen here because the District Court has inappropriately acted as the jury and decided the factual issues in this case.

**C.** **WALDEN WAS QUALIFIED FOR THE PROMOTION AS A MATTER OF LAW OR THERE ARE GENUINE ISSUES OF MATERIAL FACTS RELATED TO THIS ISSUE.**

As GE and CWA seemingly admit in their motions, for the December 2018 Job Post and January 2019 Job Post, if Walden met the minimum qualifications, he

should have been awarded the job as he was the most senior candidate in terms of seniority with GE and the collective bargaining agreement in place at the time which dictated that outcome. There is no dispute that Walden had the requisite experience (5 years of experience) either.

The dispute is over whether Walden met the minimum qualifications. But, based upon the evidence of record, Walden did because (A) passing a test was never a minimum qualification at all, (B) Walden passed the test in December 2018, and (C) one person awarded over Walden in response to the January 2019 Posting never passed the test or met the minimum qualifications.

### 1. Walden was qualified for the job; passing a test was not a qualification.

GE's position, at least prior to Walden applying, was clear and stated in the job postings issued in December 2019 and January 2019. The qualifications for the job were "Graduate of GE approved Tool & Die Apprenticeship Program or 5 years of Tool and Die job experience." (Doc. 113-2).[17] CWA's president also explained the same- that the qualifications are listed in the job posting. (Doc. 113-21, PageID1757). The job postings in question here from December 2018 and

---

[17] Even the September 2019 job post made clear that the test was extraneous to the minimum qualifications. (Doc. 113-26 ("*once it has been determined that a candidate meets the minimum requirements*, they will be required to take two tests") (emphasis added)).

January 2019 mentioned nothing at all about testing. It was not required, and a passing grade was not a minimum qualification.

Walden applied for this position. (Doc. 113-4, PageID1469). He had the minimum qualifications and the most seniority, thus, under the collective bargaining agreement, he should have been awarded the position. The entire facts discussed above about the bizarre testing GE put Walden through are entirely irrelevant to the plain and clear legal and factual analysis needed to resolve this case as a matter of contractual law. Walden was qualified. Further, at worst for Walden and if not decided by contractual law to not be a requirement, whether the test and a passing score were actually a qualification (that GE failed to post or inform of when advertising the job) is a genuine issue of material fact—one that a jury could easily resolve in Walden's favor considering CWA's president's testimony and GE's clear-cut job posting.[18]

The District Court relied upon *Davis v. Univ. of Louisville Physicians, Inc.*, No. 3:19-CV-849, 2021 WL 5452163, at *9 (W.D. Ky. Nov. 22, 2021); *Highfill v. City of Memphis*, 425 F. App'x 470, 473 (6th Cir. 2011); *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937–38 (10th Cir. 2005); and *Otto v. City of Newport*, No. 12-19-DLB-CJS, 2013 WL 5743909, at *4 (E.D. Ky. Oct. 23, 2013). But, none of

---

[18] Even more, Walden's qualification for the job is apparent with the evidence. He explained that one promoted above him are now having to ask for his assistance in performing his job. (Doc. 113-4, PageID1399).

these cases involved a situation wherein a CBA guaranteed an employee a job without testing being mentioned in said CBA or the minimum qualifications described in the job posting. None of those cases apply.

The District Court also relied upon the language in the posting explaining that "job classifications and definitions are merely for purposes of identification and general description" to determine that GE could require additional qualifications to those listed in the job posting. (Doc. 128, PageID2161; Doc. 113-2, pageID 1313). But, there is nothing in the posting saying there are or could be more qualifications for the job than specifically listed. "Classifications and definitions" are not the same as job "qualifications." The job post states: "To be considered you must turn in a Job Bid Procedure Form. The candidate must also have satisfactory performance on their present job and meet the qualifications below." (Doc. 113-2). Then, the job posting lists "Qualifications: Graduate of GE approved Tool & Die Apprenticeship Program or 5 years of Tool and Die job experience." (Doc. 113-2). Between the job posting and the CBA, the contract is not ambiguous. The parole evidence rule precludes outside evidence from being considered in this situation. "Under Kentucky law . . . the Court cannot reference extrinsic facts or aids, to determine the meaning of an unambiguous contract." *Davis v. Siemens Med. Sols. USA, Inc*., 399 F. Supp. 2d 785, 792 (W.D. Ky. 2005)

citing *Frear v. PTA Indus.*, 160, 103 S.W.3d 99 (U.S. 2003); 11 Richard A. Lord, *Williston on Contracts* § 30:6 (4th ed.).

As a matter of contractual law, Walden should have been awarded the job for meeting the minimum qualifications and applying. Further, even if that were not the case, the District Court should have made the inference here in favor of Walden, rather than GE. It did not. Rather, in inferred that the job posting language "indicates that otherwise qualified applicants might also need to meet other requirements not specified in the posting." (Doc. 128, PageID2161). The posting does not say that, and if the Court is going to make inferences when deciding a motion for summary judgment, it must make them in the nonmoving party's favor. Here, that did not happen. This Court should reverse the District Court, and find that, as a matter of law, Walden was entitled to the job. Alternatively, this Court should vacate the District Court's decision and find a genuine issue of material fact with respect to whether Walden met the minimum qualifications.

### 2. Walden passed the December 2018 Test.

GE claimed that Walden failed the December 2018 test but by GE's own admission, Walden scored at least an 80% on it. GE has no written documentation of what was considered a passing score. On most scales, an 80% is a passing score. For later testing, GE accepted a candidate that only scored an average of 69.5% between the written and hands-on testing. (Doc. 113-15). On later testing, the job

posting specified that testing was required and that a candidate must score a combined 70% minimum. (Doc. 113-26). An 80% being a passing score coincides with Riggs insinuating to Walden that he passed the test the conclusion of Walden testing, when Riggs cut Walden off from asking any additional questions about the test by summarily grading it in front of Walden. (Doc. 113-4, PageID1465-66).

GE claims no one else has passed the test after missing more than three questions. But, Riggs told Walden that the other two candidates testing in December 2018 each missed four questions. (Doc. 113-4, PageID1425). That would only give them scores of 80% as well. As discussed in detail *supra*, when compared to the answer key, one of those candidates had eight answers that were different and the other had nine. Also, prior candidates who allegedly passed the test and were awarded toolmaker positions had different answers than the answer key on at least three questions each, and some had different answers than that on the answer key on up to eight responses. So, the claim that one could only miss three questions appears entirely not credible. It was not true before Walden took the test, while Walden took the test, or after Walden took the test.

Walden did at least as well on the test, by GE's own admissions (admitting he should be given credit for at least 80%), as those candidates who had eight or nine answers different from that on the answer key. Further he did that well without warning that he would have to take the test in advance, with no

34

instructions from Riggs, and with no calculator or phone assistance, which others were apparently allowed. He also did that well without being coached up prior to the test by Riggs, another benefit King got, as discussed *supra*.  At the very least, the evidence creates a genuine issue of material fact with respect to whether Walden passed the test. Others with more answers that do not match the answer key allegedly passed and were awarded toolmaker jobs. From those facts, the jury could easily decide that Walden passed the test.

Again, this was a situation where the District Court made inferences in favor of GE rather than Walden, which was error. The District Court also misstated the facts related to this issue. The District Court found that "Riggs testified that the passing score on the 2018 test was 85 precent, and there is no record evidence refusing this statement." (Doc. 128, PageID2158). But, that is not true. As discussed in detail *supra*, many passing candidates had more than three answers on their tests not matching the answer key. Second, Walden testified that Riggs told him "they missed four, you missed six." (Doc. 113-4, PageID1425). Missing four would result in a score of less than 85%. Also, with later testing, it was published that 70% would be considered passing. (Doc. 113-4, PageID1410). The inference that should have been made in favor of the nonmoving party here was that Walden passed the test. He had ample evidence that he did so and there was a genuine issue of material fact related to the same.

**3. Crowley, a competing younger candidate, never actually passed the testing for the January 2019 Job Posting and further, did not meet the minimum qualifications by holding a certificate or five years of experience.**

GE awarded one of the January 2019 toolmaker jobs to Crowley, a younger and less senior candidate than Walden. The only documentation GE was able to produce for Crowley was his application for employment with GE. It **does not show that Crowley had five years of the requisite experience as required by the job posting**. (Doc. 113-33). Further, GE had to **change the scoring of the tests two or three times** to make a claim that Crowley actually passed the test and should be awarded the job over Walden. First, it eliminated two sections of the written test, effectively bumping Crowley's score up to 75% on the written test-- what Walden testified his Union Steward had told him was the required score on the written test to advance to the hands-on test. (Doc. 113-20, PageID1727). Second GE, apparently after at least discussion with the Union, decided to average the written score and the hands-on score. Third, it seems likely that GE changed the combined score needed to pass from 75% to only 70%, which enabled GE to round up Crowley's 69.5% to award him the job. These facts only lend more credence to the first point made in this section, which was that no passing test score was needed to actually be awarded the job.  These facts also show that GE manipulated the scores to avoid hiring Walden or to hire whatever younger candidate GE desired.

36

**4. GE's and CWA's arguments related to qualifications should fail based upon the summary judgment standards.**

GE and CWA's arguments related to qualifications should fail. Given that Walden is responding to the Defendants' motions for summary judgment, the Court should give Walden the benefit on the doubt, decide these genuine factual issues in his favor, and reject GE's and CWA's related arguments in favor of summary judgment. Walden, as the nonmoving party, is entitled to the same.

**D.    WALDEN WAS NOT TREATED FAIRLY BY CWA.**

To succeed on a Section 301 claim, Walden must show both that GE breached the collective bargaining agreement and that CWA breached its duty of fair representation. *Hank v. Great Lakes Constr. Co.*, 790 Fed. Appx. 690, 701 (6th Cir. 2019). A Union breaches its duty of fair representation when its acts or omissions are arbitrary, discriminatory, or in bad fair. *DeShetler v. FVC US, LLC,* 790 Fed. App'x 665, 669 (6th Cir. 2019).

CWA argues that Walden was treated fairly by it because it grieved his claim but only did not arbitrate it because such was reasonable to do. But, this is not the case. As a whole, CWA's representation for Walden was unfair and wholly ineffective. CWA negotiated a great benefit for Walden as a CWA member- that he would be given a position applied for if he met the minimum qualifications. However, CWA then arbitrarily completely neglected to assist Walden in enforcing that benefit.

37

First, CWA failed Walden when he initially wanted to grieve his claim by not advising him about the section of the collective bargaining agreement that was breached (which required he get the promotion as the most senior candidate meeting the minimum qualifications). CWA's representation of Walden was clearly unfair and arbitrary as it advised another similarly situated member, King, of the same when he grieved his claim—very soon after the breach occurred. King ended up advising Walden of the provision under which he should grievance his lack of promotion, not the union representatives.

Further, when King got a different result, and CWA noticed the same, it did nothing. King's different result was getting to meet with Riggs and go over his test to see what he missed. King did this with a Union Representative. Yet, CWA never bothered to see if Walden could get a similar meeting. Also, CWA practically did nothing to investigate Walden's grievance. It alleged a contract violation. GE said there was none. CWA gave up and seemingly agreed.

Even more, CWA failed to fairly represent Walden by keeping him apprised of the status of his grievance, commonly ignoring him throughout the process, and even ignoring the items he specifically wanted to raise – like the fact that Riggs had seemingly pulled the 85% passing score alleged out of the air. On top of this, CWA did not fairly represent Walden because, according to Riggs, CWA continually agreed to changing Walden's testing procedures while he was going

38

through the application process, including but not limited to adding five additional questions on a test two other candidates Walden was competing with had already taken.

CWA's decision to not arbitrate, while not fair as well, was only one minor piece of the unfairness suffered by Walden. But, it was a significant piece of the same—and its decision to not arbitrate because Walden had filed NLRB charges against CWA was wholly arbitrary and irrational. Blades testified that the NLRB complaint was pursuing the same—but that was not true at all and Blades should have known the same. The NLRB complaint was against CWA for not aggressively pursuing Walden's grievance. The NLRB decision finds CWA negligent. (Doc. 113-34 ("this amounts to mere negligence")). CWA using its own negligence and complaints of such as an excuse to not pursue arbitration shows clear arbitrariness and bad faith.

CWA's representation of Walden was so poor, it makes one wonder why he would ever bother paying his union dues. He should be refunded his dues. Had the CWA put a fair force behind Walden's representation, he likely would have gotten his promotion like King did. There are certainly facts that are favorable to Walden regarding whether his representation was fair. For the purposes of summary judgment requested by the Defendant, the Court should consider those in Walden's favor. The Court should reject CWA's argument.

**E.**   **WALDEN CAN PROVE BOTH THAT HE WAS QUALIFIED FOR THE JOB AND THAT A SIMILARLY SITUATED PERSON NOT PART OF A PROTECTED CLASS WAS AWARDED THE JOB.**

GE argues that Walden's claim should be dismissed on summary judgment because he cannot prove that he was qualified for the job or that a similarly situated person not of a protected class was awarded. As discussed *supra*, Walden was qualified for the job because he met all the qualifications listed by GE, which according to the job posting and the CBA, dictated that he should have been awarded the job. CWA President Blades, who was directly involved in contract negotiations, agreed that the job posting should have the requirements in it—and in this case it clearly did.

Further, as discussed in great detail *supra*, GE's entire argument that Walden cannot show other similarly situated outside the protected class were awarded the role should fail because it is entirely predicated on an argument that the other "similarly situated" passed the exam Walden failed. Objectively, the answer key to the exam tells a different story. Both of the other candidates (Bryant and Brown) who took the test and were awarded positions over Walden in December 2018 did not have a number of answers matching the key. Bryant could not even verify that a good portion of the answers handwritten on the test were in his handwriting. Even more, as previously indicated, the evidence most favorably viewed for Walden indicates that Walden did not have to take a test at all. As the candidate

40

with the minimum qualifications and most seniority, he should have been awarded the job. So, it does not really matter what the scores on the test were.

Brown and Bryant were much younger than Walden. They were not in Walden's protected class. They were similarly situated (though with less seniority) and got awarded the job Walden should have been awarded. Walden is in a protected class due to his age while Brown and Bryant are not. The CBA required Walden to get the job. GE discriminated against Walden by not giving it to him, and even more, did so in a disgraceful way. GE gave Walden a harder test (requiring him to answer 25 questions rather than the 20 questions the other candidates were originally given and the 20 questions others applying for the job had been given for years prior). Further, GE had Walden take the test under less favorable conditions- he was pressured to do it without much notice, told he would slow down the process if he did not do it immediately, distracted by conversations in his presence during his exam, given no instruction, not instructed that he could use a calculator or phone for his test (when apparently others were allowed this), and essentially forced to turn in his test and told he had passed when he intended to instead ask some simple questions prior to completing the exam.

GE's position, at least prior to Walden applying, was clear and stated in the job postings issued in December 2019 and January 2019. The minimum qualifications for the job were "Graduate of GE approved Tool & Die

Apprenticeship Program or 5 years of Tool and Die job experience." (Doc. 113-2). The Union's president also explained the same- that the qualifications are listed in the job posting. (Doc. 113-21, PageID1757). The job posting here mentioned nothing at all about a test. It was not required and a passing grade was not a required qualification.

Walden applied for this position. (Doc. 113-4, PageID1469). He had the minimum qualifications and the most seniority, thus, under the CBA, he should have been awarded the position. The entire facts discussed above about the bizarre testing GE put Walden through are entirely irrelevant to the plain and clear legal and factual analysis needed to resolve this case. Walden was qualified. Further, at worst for Walden, whether the test and a passing score was actually a qualification (that GE failed to post or inform of when advertising the job) is a genuine issue of material fact—one that a jury could easily resolve in Walden's favor considering the Union's president's testimony and GE's clear-cut job posting.

GE argues that several cases are dispositive on this issue. *Smith v. City of Toledo, Ohio*, 13 F.4th 508, 515 (6th Cir. 2021) is not remotely similar to this case because that case dealt with no evidence like the evidence Walden presents here- that Walden actually passed the test since Riggs informed him that "it would not be an issue" while turning it in and since objectively many others who took the same test similarly did not have answers matching the answer key. In *Smith*, the plaintiff

admitted he never passed the test. *Id.* Further, in *Smith,* it was established that no one had ever passed the academy without passing the test. Here, Crowley got awarded a toolmaker position without legitimately passing any test until GE played with the number so much that it made him pass. Further, GE's own posting did not require any certain test score to be awarded the position. Essentially the same can be said for *Highfiill v. City of Memphis*, 425 f. App'x 470, 473-74 (6th Cir. 2011) and *Garrison v. Gambro, Inc.,* 428 F.3d 933, 938-39 (10th Cir. 2005).  In *Highfill*, the plaintiff conceded he did not obtain a necessary certificate. *Highfill*, at 474. In *Garrison*, the plaintiffs failed tests but argued that they were qualified nonetheless because the tests were for positions that were essentially the same as the ones they were previously working. *Garrison*, at 938.

## F.   GE HAS NO LEGITIMATE NON-DISCRIMINATORY BASIS FOR SELECTING ITS TOOLMAKERS.

GE claims its legitimate non-discriminatory basis for selecting its toolmakers is the same reason that Walden is not qualified- which is that he failed the test. As discussed throughout this response *supra*, that argument should fail for the same reasons- and even more so on this prong—since, as explained by GE and commonly known, the Employer bears the burden of proving the second prong of the *McDonald Douglas* Burden Shifting test by showing a legitimate reason for its actions. Here, GE has no way to show any legitimacy. While Riggs claims the Union was involved in every decision and signed off at every corner on changing

43

the toolmaker test right before Walden took it in December 2018, Skilled Trades Brown (see footnote 2) refuted that. While Riggs claimed Bryant and Brown were brought back to take the additional five questions of the December 2018 test, neither remembered that initially and only one did after prompting.

Further, even if CWA agreed to that change, it would not make it right or legitimate. Put simply, the CBA was what the CBA was. It guaranteed Walden the job, plain and simple. There is no reason to consider parole evidence and doing so is not in compliance with the law.

Further, when Walden started pursing the toolmaker role, GE changed the testing that had remained the same for two years prior five times: (1) in December 2018, by adding five questions; (2) in January 2019, by moving it to the community college and making it two part- one written, one hands-on; (3) in February 2019, by striking two sections from the new written testing; (4) at some point before awarding Crowley the job, by lowering the required score to 70%; and (5) at some point before awarding Crowley the job, by allowing the written and hands-on tests to be averaged. There is nothing legitimate about the way GE has played with the testing passing score in this case.

## G. GE'S ALLEGED REASON (THE TESTING) IS PRETEXT FOR AGE DISCRIMINATION.

First, it should be noted that Walden will unlikely have to get to the pretext prong. He meets his prima facie case because he was a member of a protected

class, was denied a promotion he was qualified for, that promotion was given to others outside the class, and GE has no legitimate reason for its actions.

However, even if the pretext prong is reached, Walden should prevail. GE claims its should win on the pretext prong of the analysis for the same reason it should win all of the other prongs- because it alleges Walden failed his test. For the same reasons discussed prior that is wrong- or at least a genuine issue of material fact which a jury could easily determine in Walden's favor. Rather, GE has repeatedly used the test excuse as pretext despite the fact that Walden did no worse on it than many others. It is clear that GE's Riggs set his sights to hire Bryant and Brown, two much younger candidates than Walden. When Walden unexpectedly applied and did well on the test, GE, for the first time ever, announced that the passing score was 85% and that Walden missed it while the other two got it. But, closer examination of the test results reveals that to be untrue as does Riggs initial recounting of the test scores to Walden. The 85% passing score is a farce. GE made it up as pretext. Others have been awarded jobs despite having far more than 3 answers not match the answer key. For all the same reasons discuss *supra* that GE's reason is not legitimate, it should be found pretextual. The pretext evidence is clear in the fact that GE gave the younger King a different and more favorable response to his grievance than it gave Walden to a grievance that mirrored King's in almost every way. Further, GE's entire argument regarding its decision being an

honest decision should also fail considering that the evidence in the record makes Riggs' claims that Walden failed the December 2018 test appear not credible.

Walden, especially with the facts viewed as most favorable for the nonmoving party, can prove GE's alleged legitimate reason is pretext.

## H.    THERE IS NO ISSUE PRECLUSION RELATED TO THE NLRB CASE

GE alleges issue preclusion for Walden's 301 claim because he pursued a similar action through a NLRB claim. But, there is no issue preclusion. As the case cited by GE explains, for there to be preclusion, the issues must be identical, and the party must have a full and fair opportunity to litigate. *Olchowik v. Sheet Metal Workers' Int'l Assoc.*, 875 F.2d 555, 557 (6th Cir. 1985).

In the NLRB Action Walden filed, Walden alleged that CWA violated the National Labor Relations Act starting in November 2019 by refusing to contact Walden or his attorney. It also alleged that, within the last six months, the Union had failed and refused to process his grievances concerning not receiving a tool and die maker job. It was found that the Union had committed mere negligence by failing to keep Walden informed on his grievance. (Doc. 113-34, pages 1-2).

Here, the issues are not the same, though they are admittedly similar. Walden's complaint about unfair representation here includes those items the Union did (or failed to do) that he complained about to the NLRB. But they also include the Union not arbitrating his claim and actively, allegedly signing off on

46

various items that made Walden's application process more difficult, like changing the testing procedures. Further, they include actions (or inactions) from the Union long before November 2019- which was the date the NLRB considered. Also, the question answered in that case was different than the question to be answered here-there it was only considered whether the Union represented Walden during that short period of time and before the NLRB ever knew whether the Union was going to take Walden's case to arbitration or not. Here, it is requested that the Court examine all of the Unions actions in both Walden's case (started in December 2018 and continuing until the Union denied arbitration) and King's comparable case (started in January 2019 when he applied for the job and ending when he was awarded the job in September 2019). So the issues are not entirely the same. Further, here, the question is whether there was a violations of Section 301 of the National Labor Relations Act- for both GE's breach of the collective bargaining agreement and CWA for failing in its duty to provide him with fair representation. The NLRB action only dealt with the Union's malfeasance for a limited period of time.

Even more, Walden did not get a chance to fully and fairly litigate the case before the NLRB. He was *pro se*, going against a well-represented Fortune 500 Company and its Union, not exactly a fair litigation by any stretch of the imagination. Much of the allegations and issues discussed herein were not

47

addressed fully or completely by the NLRB and thus, the issue should not be considered precluded—and certainly not when all inferences are made in favor of the nonmoving part- Walden in this case.

GE's argument on this issue should fail. Issue preclusion is not appropriate given the facts.

## I. WALDEN'S CLAIM RELATED TO VIOLATION OF SECTION 301 OF THE NATIONAL LABOR RELATIONS ACT SHOULD SUCCEED ON THE MERITS.

GE argues that Walden's claim related to the violation of Section 301 of the National Labor Relations Act should fail on the merits because (1) it is time-barred because he did not grieve it within six months; (2) he failed to exhaust it because he did not grieve it; (3) the Union did not commit any contract violations; and (4) GE did not violate the contract. Each issue will be addressed.

GE's claims that Walden did not grieve his lack of promotion within six months is false. Walden filed a grievance on March 12, 2019 protesting his lack of promotion and explaining the contract violation. (Doc. 113-29; PageID1853). Frankly, he would have filed it sooner had he been given more fair representation by the Union as King was. Nevertheless, this March 12, 2019 filing was within six months of him not getting the job in response to both the December 2018 and January 2019 job postings. By explaining that was grieving denial of the toolmaker

job "for the second time" his grievance clearly covered both instances. (Doc. 113-29; PageID1852).

GE's claim that CWA did not violate the contract is accurate. There is no accusation that CWA violated the contract, nor is that an element to any claim being pursued.

GE's claim that it did not violate the contract wrong. GE breached the collective bargaining agreement by not promoting Walden, the most senior candidate who applied for the job. At the very least, whether GE violated is a genuine issue of material fact in this case. It alleges that it did not violate the contract because it was only required to promote Walden if he were qualified. But, as GE points out, its own job posting deems Walden qualified due to his experience in toolmaking. Accordingly, he was qualified. At the very least, he was qualified when the evidence is viewed in the light most favorable to Walden. GE does make one drastic misrepresentation in this portion of its brief though – it claims that the posting explains that "the **listing of qualifications** was not 'all inclusive or exhaustive of the actual requirements.'" (GE's Motion for Summary Judgment, PageID1112 (emphasis added)).  **But, the language quoted by GE is not about the listing of qualifications. Rather, it is about the job description and the job requirements**. The posting, with the language quoted completely out-of-context by GE, specifically states as follow:

Note: The job classifications and definitions are merely for purposes of identification and general description and do not purport to be ***all inclusive or exhaustive of the actual requirements*** of any job so classified or defined. To be considered, you must list your qualifications or attach a resume or record of experience.

(Doc. 113-2 (emphasis added)). GE's argument, and especially its misrepresentation to the Court, should fail. The Court should find that the posting, in conjunction with the collective bargaining agreement actually does require Walden to get the job or alternatively, that there is a genuine issue of material fact on this subject that should be decided by a jury.

## J. THE COURT SHOULD HAVE ALLOWED WALDEN TO SUR-REPLY TO GE'S REPLY SINCE GE INCLUDED NEW EVIDENCE WITH ITS REPLY.

Walden requested to be able to file a sur-reply because after his response, GE produced and submitted a new statement from Riggs to which Walden would otherwise never get an opportunity to address. (Doc. 116-5; Doc. 117). The District Court denied the same. (Doc. 126; Doc. 128).

Under the District Court's precedent and by normal rules of fair play, Walden should be allowed to respond to completely new evidence manufactured and submitted by the GE only when Walden would otherwise not have an opportunity to respond. The Magistrate Judge found Plaintiff was simply trying to get the last word in, but Walden respectfully disagrees. Walden and his attorney desperately

desired to not have to respond further to GE's motion. But, considering that GE submitted new evidence with its reply, felt compelled to do so.

In the new evidence submitted by GE, GE's witness, in a prepared statement, claims for the first time that Walden was given the same opportunities as a younger employee. That is obviously a significant claim considering that this is an age discrimination case. Although that witness was deposed and his deposition was lengthy, he had never made that claim previously. If he had, there would have been no need for GE to have him prepare such a statement during the eleventh hour of litigation on this case. The District Court not allowing Walden to address it through a sur-reply wrongfully denies him an opportunity to challenge that assertion.

The District Court has allowed sur-replies under similar circumstances, and seemingly even less warranted circumstances, previously. *See Best v. James*, No. 3:20-CV-299-RGJ, 2023 U.S. Dist. LEXIS 4180, at *3-4 (W.D. Ky. Jan. 10, 2023) (allowing a sur-reply to respond to mere arguments made, not new evidence that was never-before-available). Like in that case, here, the sur-reply was also submitted swiftly (within six days of the reply). Like in that case, here, the sur-reply is worthy of consideration. The District Court allowed the sur-reply in that case, it should have done the same here. It abused its discretion by not doing so.

VI.    **CONCLUSION.**

GE and CWA put forth no legitimate reason either should have this case dismissed on summary judgement.  The motions for summary judgment should have been denied. This Court should reverse and vacate the District Court's decision as explained herein.

Respectfully,

Vowels Law PLC
126 North Main Street
P.O. Box 2082
Henderson, Kentucky 42419-2082
Telephone: (270) 831-0805

By:___/s/ Austin P. Vowels_____
        Austin P. Vowels

## <u>CERTIFICATE OF COMPLIANCE</u>

**Word Count**

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 12,855 words (exclusive of the cover, table of contents, table of authorities, statement on oral argument, certificate of compliance, and certificate of service). I relied on my word processor to obtain the count, using Microsoft Word Office 365.

**Type Face**

In addition, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of  Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced type face using Microsoft Word 2007 in Times New Roman, 14 pt.

    s/ Austin P. Vowels_____
    Austin P. Vowels

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served upon the parties by electronically filing or mailing the same on this 25th day of April, 2024 to the following:

Robert F. Holt, Esq.
IUE-CWA Staff Attorney
2701 Dryden Road
Dayton, Ohio 54539
Email: rholt@iue-cwa.org
**ATTORNEY FOR DEFENDANT**

Jay Inman, Esq.
Little Medelson, P.S.C.
333 West Vine Street, Suite 1720
Lexington, Kentucky 40507
Email: jinman@littler.com
**ATTORNEY FOR DEFENDANT**

/s/Austin P. Vowels
Austin P. Vowels

54

ADDENDUM

Designation of Relevant Originating Court Documents with Page ID # range, if applicable:

| | |
|---|---|
| Amended Complaint, Doc. 21, Page ID ## | 128-136 |
| Motion for Summary Judgement by CWA, Doc. 107, Page ID ## | 851-1086 |
| Motion for Summary Judgement by GE, Doc. 108, Page ID ## | 1087-1233 |
| Response to Motions for Summary Judgement, Doc. 113, Page ID ## | 1253-1892 |
| Reply to Response to Mt for Sum Judge by GE, Doc. 116, Page ID ## | 1897-2094 |
| Motion for Leave to file Sur-Reply, Doc. 117, Page ID ## | 2112-2118 |
| Affidavit of Michael Walden, Doc. 118, Page ID ## | 2119-2120 |
| Objection to Report and Recommendation, Doc. 127, Page ID ## | 2146-2148 |
| Memorandum and Order, Doc. 128, Page ID ## | 2149-2169 |
| Judgment, Doc. 129, Page ID # | 2170 |