Case No. 24-5141

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

## MICHAEL WALDEN

Plaintiff-Appellant

v.

## GENERAL ELECTRIC INTERNATIONAL, INC. A/K/A GENERAL ELECTRIC A/K/A GE AVIATION and COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, CLC

Defendants-Appellees

_____

On Appeal from the United States District Court
for the Western District of Kentucky at Owensboro
Case No. 4:19-CV-159-DJH-HBB

_____

## BRIEF OF GENERAL ELECTRIC APPELLEE

_____

Dated:    May 28, 2024

Jay Inman
Jessica N. Wimsatt
LITTLER MENDELSON, P.S.C.
333 West Vine Street, Suite 1720
Lexington, KY  40507
Telephone:   859.317.7973
Facsimile:   859.201.1250
E-mail:       jinman@littler.com
              jwimsatt@littler.com

*Attorneys for General Electric Defendant-Appellee*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **MICHAEL WALDEN** | : |
| | : |
| Plaintiff–Appellant | : |
| | : |
| v. | :     Case No. 24-5141 |
| | : |
| **GENERAL ELECTRIC** | : |
| **INTERNATIONAL, INC., et al.** | : |
| | : |
| Defendants–Appellees | : |
| | : |

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTERESTS

Pursuant to Sixth Circuit Rule 26.1, Defendant-Appellee General Electric International, Inc. A/K/A General Electric A/K/A GE Aviation makes these disclosures:

**I.**   Are said parties a subsidiary or affiliate of a publicly owned corporation?

ANSWER:  Yes.

If the answer is Yes, list below the identity of the parent, subsidiary or other affiliate corporation and the relationship between it and the named party:

General Electric International, Inc. is a subsidiary of General Electric Company, which is publicly owned.

**II.**     Is there a publicly owned corporation, not a party to the appeal, which has a financial interest in the outcome?

ANSWER:  Yes.

If the answer is Yes, list the identity of such corporation and the nature of the financial interest:

General Electric International, Inc. is a subsidiary of General Electric Company, which is publicly owned.


/s/ Jay Inman                                             May 28, 2024                                         
Jay Inman                                                   Date

# TABLE OF CONTENTS

**PAGE**

I.   STATEMENT OF ORAL ARGUMENT....................................................1

II.  JURISDICTIONAL STATEMENT ....................................................2

III. COUNTERSTATEMENT OF THE ISSUES .................................3

IV.  INTRODUCTION ...................................................................4

V.   COUNTERSTATEMENT OF THE CASE ....................................6

    A.   Union Workplace and Requirements for Employees to Upgrade to Open Positions....................................................................6

    B.   By failing the required qualification test, Mr. Walden failed to qualify for an open Toolmaker position in late 2018.........................7

    C.   Mr. Walden declined to grieve his non-selection for the December 2018 Toolmaker openings. ...................................9

    D.   By again failing the required testing, Mr. Walden failed to qualify for a Toolmaker position in February 2019. .........................10

    E.   Mr. Walden grieved his failure to qualify for a Toolmaker position during the February 2019 process. .......................................12

    F.   Mr. Walden filed an unmeritorious charge against the Union with the National Labor Relations Board (NLRB). ...........................14

    G.   Mr. Walden filed a charge with the Equal Employment Opportunity Commission (EEOC) around the same time. ...............15

    H.   After the EEOC dismissed the charge, Mr. Walden filed this lawsuit, and the District Court resolved initial motions, limiting the claims.............................................................................16

    I.   Mr. Walden sought leave to file an improper sur-reply during summary judgment briefing, and the Court correctly exercised its broad discretion to deny leave.....................................................17

VI.  SUMMARY OF THE ARGUMENT .........................................19

# TABLE OF CONTENTS
### (CONT'D)

PAGE

VII.  ARGUMENT ...................................................................22

    A.  Mr. Walden Improperly Relies On Unpreserved Arguments. ...........22

    B.  Summary Judgment For GE Aviation Remains The Correct
        Result. ...................................................................24

        1.  As an initial matter, per his EEOC Charge, Mr. Walden
            may not base his ADEA claim on any allegations outside
            of the time from December 17, 2018, to June 4, 2019. ...........24

        2.  Mr. Walden's ADEA failure-to-be-promoted claim fails
            further on the merits for multiple independent reasons. ..........26

        3.  The NLRB's decision precludes Mr. Walden's
            contentions relating to his hybrid LMRA claim. .....................38

        4.  Either way, Mr. Walden's LMRA claim fails further on
            the merits for multiple reasons.................................................41

    C.  The District Court correctly exercised its discretion to deny Mr.
        Walden leave to file an overbroad sur-reply during summary
        judgment briefing. ...........................................................43

VIII.  CONCLUSION ...............................................................45

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Anthony v. BTR Auto. Sealing Sys., Inc.*,
339 F.3d 506 (6th Cir. 2003) ...............................................................27

*Arendale v. City of Memphis*,
519 F.3d 587 (6th Cir. 2008) ...............................................................28

*DelCostello v. Int'l Bhd. Of Teamsters*,
462 U.S. 151, 169-70 (1983) ...............................................................41

*Dhillon v. Grewal*,
No. 3:22-CV-197-RGJ, 2023 WL 131111 (W.D. Ky. Jan. 9, 2023)................43

*Duha v. Agrium, Inc.*,
448 F.3d 867 (6th Cir. 2006) ...............................................................35

*Garrison v. Cassens Transp. Co.*,
334 F.3d 528 (6th Cir. 2003) ...............................................................41

*Garrison v. Gambro, Inc.*,
428 F.3d 933 (10th Cir. 2005) ...............................................................27

*George v. Youngstown State Univ.*,
966 F.3d 446 (6th Cir. 2020) ...............................................................22

*Hartsel v. Keys*,
87 F.3d 795 (6th Cir. 1996) ...............................................................31

*Highfill v. City of Memphis*,
425 F. App'x 470 (6th Cir. 2011) ...............................................................27

*Johnson v. Weld Cnty., Colo.*,
594 F.3d 1202 (10th Cir. 2010) ...............................................................36

*Kreipke v. Wayne State Univ.*,
807 F.3d 768 (6th Cir. 2015) ...............................................................22

# TABLE OF AUTHORITIES
(CONT'D)

PAGE

*Kuhn v. Washtenaw Cnty.*,
  709 F.3d. 612 (6th Cir. 2013) ............................................................25

*Mirando v. Dep't of Treasury*,
  766 F.3d 540 (6th Cir. 2014) ............................................................44

*Olchowik v. Sheet Metal Workers' Int'l Ass'n*,
  875 F.2d 555 (6th Cir. 1989) ............................................................38

*Pelcha v. MW Bancorp, Inc.*,
  988 F.3d 318 (6th Cir. 2021) ............................................................26

*Provenzano v. LCI Holdings, Inc.*,
  663 F.3d 806 (6th Cir. 2011) ........................................................30, 33

*Rowan v. Lockheed Martin Energy Sys.*,
  360 F.3d 544 (6th Cir. 2004) ............................................................26

*Russell v. Three Pillars*,
  No. 21-1481, 2022 WL 351770 (6th Cir. Feb. 7, 2022) ....................................25

*Seeger v. Cincinnati Bell Tel. Co., LLC*,
  681 F.3d 274 (6th Cir. 2012) ............................................................35

*Sheet Metal Workers' Health & Welfare Fund of North Carolina v.
  Law Office of Michael A. DeMayo, LLP*,
  21 F.4th 350 (6th Cir. 2021) ........................................................22, 23

*Shoemaker v. E.I. DuPont de Nemours & Co.*,
  405 F. App'x 16 (6th Cir. 2010) ........................................................33

*Smith v. City of Toledo, Ohio*,
  13 F.4th 508 (6th Cir. 2021) ............................................................30

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993)..................................................................34, 37

*Swanigan v. FCA US LLC*,
  938 F.3d 779 (6th Cir. 2019) ............................................................40

# TABLE OF AUTHORITIES
### (CONT'D)

PAGE

*Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*,
  749 F.2d 315 (6th Cir. 1984) ................................................................42

*Vinson v. Ford Motor Co.*,
  806 F.2d 686 (6th Cir. 1986) ................................................................24

*Wright v. Memphis Light, Gas, & Water Div.*,
  558 F. App'x 548 (6th Cir. 2014) ........................................................33

*Young v. Int'l Union United Auto., Aero., & Agri. Implement Workers of Amer., Local 651*,
  686 F. App'x 304 (6th Cir. 2017) ........................................................42

*Younis v. Pinnacle Airlines, Inc.*,
  610 F.3d 359 (6th Cir. 2010) ..........................................................24, 25

**Statutes**

28 U.S.C. § 636 ......................................................................................18

29 U.S.C. § 185(a) ................................................................................41

29 U.S.C. § 623(d) ................................................................................24

Kentucky Civil Rights Act ................................................................16, 17

Labor Management Relations Act .................................. 3, 17, 19, 20, 38, 39, 40, 41

**Other Authorities**

29 C.F.R. § 1601.12(b) ..........................................................................24

Rule 56 ..................................................................................................34

Rule 59 ..................................................................................................22

## I.     <u>STATEMENT OF ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 34(a), General Electric International, Inc. A/K/A General Electric A/K/A GE Aviation states that oral argument is unnecessary. Several independent reasons exist for the District Court's Judgment to be affirmed, and each may be discerned plainly from the record.

## II. <u>JURISDICTIONAL STATEMENT</u>

General Electric International, Inc. A/K/A General Electric A/K/A GE Aviation agrees generally with the Jurisdictional Statement presented by Appellant Michael Walden, who timely appealed from the Judgment entered in the District Court for the Western District of Kentucky. [R.130, Notice of Appeal, PageID #2171]; [R.129, Judgment, PageID #2170].

III.    **COUNTERSTATEMENT OF THE ISSUES**

1.    Whether summary judgment should be affirmed for General Electric International, Inc. A/K/A General Electric A/K/A GE Aviation on the age discrimination claim brought by Michael Walden, where he cannot show that he qualified for the Toolmaker positions he sought or that any similarly situated employees outside his protected class were treated more favorably, GE Aviation articulated a legitimate nondiscriminatory basis for Mr. Walden's non-selection, he cannot demonstrate GE Aviation's basis for non-selection to be a pretext for unlawful discrimination, GE Aviation honestly believed in its basis for non-selection, and Mr. Walden can show no intentional discrimination.

2.    Whether summary judgment should be affirmed for General Electric International, Inc. A/K/A General Electric A/K/A GE Aviation on the hybrid Section 301 LMRA claim brought by Michael Walden, where issue preclusion bars Mr. Walden from relitigating the same issues already addressed fully and fairly by the National Labor Relations Board, GE Aviation did not violate the applicable collective bargaining agreement, and the Union properly handled Mr. Walden's grievance relating to Toolmaker postings.

## IV.  <u>INTRODUCTION</u>

This is an unusually straightforward single-plaintiff employment case. Michael Walden, a GE Aviation machine operator, sought posted Toolmaker positions at GE Aviation, but he failed qualifying tests for the positions each time. Because Mr. Walden never qualified for the higher-skilled positions, GE Aviation could award none of the positions to him, despite his overall seniority with the company.

Rather than accept the results, Mr. Walden challenged every aspect of the testing process, arguing that somehow GE Aviation, Mr. Walden's union, and community colleges involved in the testing process engaged in a scheme to discriminate against him based on age and violate the applicable collective bargaining agreement, or CBA. As the record makes plain, Mr. Walden's arguments are baseless; they are chocked full of self-interested personal views about how he believes the testing should have been administered and ill-founded suspicion about GE Aviation's and the union's motives, rather than evidence. No matter how complicated and unclear Mr. Walden attempts to make matters, however, he cannot escape the ultimate straightforwardness of this matter based on his own testing results.

The District Court analyzed the record carefully and issued a thorough and well-reasoned decision granting summary judgment to GE Aviation. Upon review, this Court should affirm summary judgment in full.

## V.    COUNTERSTATEMENT OF THE CASE

On or about August 25, 2011, General Electric International, Inc. A/K/A General Electric A/K/A GE Aviation ("GE Aviation") began to employ Michael Walden in the role of Flexible Machine Operator II at the Company's Madisonville, Kentucky, facility. *See* [R.108-1, Offer Letter, PageID #1113]; [R.108-2, Walden Deposition Excerpts, PageID #1120]. In the Flexible Machine Operator II position, Mr. Walden contributes to manufacturing turbine airfoils and must set up and operate machines, including maintaining operational adjustments and loading and unloading machines.

### A.    Union Workplace and Requirements for Employees to Upgrade to Open Positions.

Mr. Walden belongs to a union, the Industrial Division of the Communication Workers of America (IUE-CWA) (the "Union"), but has never held a steward or any other leadership role. The applicable collective bargaining agreement (CBA) governs various aspects of employment, including when new positions become available for bid. *See generally* [R.108-3, CBA Excerpts, PageID #1127-36]. Under Article XXVIII of the CBA, in particular, GE Aviation and the Union agreed that employees must have the necessary qualifications before being able to upgrade to a higher-rated job:

> The Company will, to the extent practical, give first consideration for job openings and upgrading to present employees, when employees with the necessary qualifications are available. In upgrading employees

6

> to higher rated jobs, the Company will take into consideration as an important factor, the relative length of seniority of the employees who it finds are qualified for such upgrading; provided, however, that in upgrading employees to job openings with job rates within the one-month progression schedule, as provided for in Article VI, Section 4(a) 4(a) of this Agreement, the relative seniority of those employees found qualified for such upgrading shall be the controlling factor.

*See id.* at PageID #1135. Consistent with this CBA language, a local supplemental agreement confirms that "Open Posted Positions at M-18 and above will be awarded on the basis of Total Plant Seniority to those employees that possess the minimum qualifications." *See* [R.108-4, Local Agreement Excerpt, PageID #1139]. As this language makes plain, GE Aviation must consider seniority as an "important factor," but only for "employees who it finds are qualified for such upgrading," including "employees that possess the minimum qualifications."

**B.   By failing the required qualification test, Mr. Walden failed to qualify for an open Toolmaker position in late 2018.**

On December 6, 2018, GE Aviation posted openings for two first-shift Toolmakers. *See* [R.108-5, Posting #2018-081, PageID #1140]. As the job posting set out, Toolmakers have position responsibilities such as "build[ing] and assembl[ing] various types of tools, fixtures, gauges, dies, etc. of intricate and complicated designs . . ., [d]iagnos[ing] and repair[ing] original designs of complex and intricate tools and fixtures, . . . [and] [m]ak[ing] and replac[ing] parts." *See id.* To be qualified for the Toolmaker job, in addition to being a "Graduate of GE approved Tool & Die Apprenticeship Program or 5 years of Tool and Die job

7

experience," applicants had to take a qualifications test. *See* [R.108-6, Riggs Deposition Excerpts, PageID #1144-45].

Since testing had been implemented for Toolmaker positions in 2016, the test had been twenty questions in length, with a required passing score of 85%. *See id.* at 1145-50. Cooperatively with the Union, the Company introduced testing in order to "assur[e] that we were obtaining quality toolmakers that possess the correct job skill." *See id.* at 1144-45. Around the time of the 2018 openings, again in cooperation with the Union, GE Aviation incorporated five more questions for all testers to address a concern that the questions had been disclosed and discussed on the work floor. Even with the addition of these five questions, the passing score remained 85%. *See id.* at 1151-52.

Three current employees bid for the open first-shift Toolmaker positions: Bradley R. "Brad" Brown, Nathan Bryant, and Mr. Walden. Because the resumes of each of the three indicated they had the requisite level of Toolmaker-related experience, they all were eligible to take the qualifying test for the Toolmaker job. *See* [R.108-7, Blades Affidavit to NLRB, PageID #1164] ("The Employer has been testing for a long time."). All three candidates responded to the exact same twenty-five questions on the test: Mr. Brown and Mr. Bryant, who had taken the test before the update with twenty questions coming back to respond to the new five questions as part of the process, and Mr. Walden, who was last to take the test responding to

all twenty-five questions at the same time. See id. Based on grading of each candidate's responses to the same twenty-five questions, Mr. Brown scored a 100%, Mr. Bryant scored 95%, and Mr. Walden scored an adjusted 80%, after GE Aviation considered his concerns about one question and declined to count his incorrect response against him. *See* [R.108-8, Brown Test, PageID #1167-71]; [R.108-9, Bryant Test, PageID #1172-76]; [R.108-10, Walden Test, PageID #1177-81].

Because Mr. Brown and Mr. Bryant passed the test (scored higher than 85%) and Mr. Walden failed the test (scored lower than 85%), Mr. Brown and Mr. Bryant were the only two candidates who met the qualifications for the Toolmaker openings. For that reason and on that basis alone, on December 19, 2018, GE Aviation awarded the Toolmaker positions to Mr. Brown and Mr. Bryant. *See* [R.108-6 at PageID #1159-60]; [R.108-11, Award Notice, PageID #1182].

## C.    Mr. Walden declined to grieve his non-selection for the December 2018 Toolmaker openings.

Following the decision awarding the positions to Mr. Brown and Mr. Bryant, Mr. Walden discussed his alleged view of the decision as unfair with Union officials, including his Union Steward Barry Basham and Skilled Trades Chairman Brad Brown. *See* [R.108-12, Brown Deposition Excerpts, PageID #1185-86]. Mr. Brown advised Mr. Walden that a grievance would have almost no chance of succeeding because he would not be awarded a Toolmaker position. *See id.* at PageID #1186. Based on this guidance, Mr. Walden elected not to file a grievance regarding his

9

non-selection for the December 2018 Toolmaker openings. *See id.* at PageID #1187. As Mr. Brown recalled clearly, Mr. Walden tried for the next Toolmaker opening to see whether he would find success on the required test. *See id.*

### D.    By again failing the required testing, Mr. Walden failed to qualify for a Toolmaker position in February 2019.

On January 30, 2019, soon after Mr. Walden's failure to qualify for a Toolmaker position in December 2018, GE Aviation posted more Toolmaker openings, including one each for first shift and second shift, to be filled in February 2019. *See* [R.108-13, Postings #2019-018 and #2019-019, PageID #1189-90]. Based on discussions and agreement with the Union, and before any testing began in 2019, GE Aviation instituted a new Toolmaker testing process, with a new test. *See* [R.108-7, PageID #1164-65]. Under the new process, employees who bid for Toolmaker positions would take a written test showing their knowledge of applicable principles and a skills test showing their hands-on aptitude for the role, all administered externally by two area community colleges and with an average combined passing score of 70% required. *See* [R.108-6, PageID #1154-55]; [R.108-14, Blades Deposition Excerpts, PageID #1193-96]. For the written test, GE Aviation and the Union approved the community colleges to use an industry-recognized test from the National Occupational Competency Testing Institute (NOCTI), with several subject areas not applicable to GE Toolmaker jobs removed at the Union's request. *See* [R.108-6, PageID #1153-54, 1156-59]; [R.108-7, PageID #1164]; [R.108-14,

10

PageID #1194-96]. GE Aviation and the community colleges developed a hands-on skills test too, and the Union evaluated and approved the test as fair and reasonable. *See* [R.108-6, PageID #1161-62]; [R.108-7, PageID #1164]. At first, the new testing process was contemplated to require bidding employees to pass the written test to take the skills test, but discussions with the Union emphasized that bidding employees may be strong with skills versus written knowledge, so the Company agreed to permit bidding employees to take both tests, calculating each employee's total score as an average of their two test results. *See* [R.108-6, PageID #1154-56]; [R.108-14, #1194-96].

Mr. Walden applied for the second shift opening as one of a group of employees of various ages who bid for open positions. *See* [R.108-2, PageID #1118-19]. Like all bidding employees whose resumes indicated the requisite experience, Mr. Walden took both parts of the test to try to qualify for the second-shift Toolmaker position. He scored 86.89% on the written test, but a miserable 16% on the skills test, resulting in a combined score average of 51%. *See* [R.108-15, Walden Written Test Scoresheet, PageID #1199]; [R.108-16, Walden Skills Test Scoresheet, PageID #1200]. This showed Mr. Walden was still not qualified to be a Toolmaker. In contrast, the other employee bidding for the second-shift Toolmaker position, Keith Crowley, scored 75.2% on the written test and 64% on the skills test, which averaged to a passing 70%. *See* [R.108-17, Crowley Written Test Scoresheet,

PageID #1201]; [R.108-18, Crowley Skills Test Scoresheet, PageID #1202].

On March 8, 2019, because Mr. Crowley passed the required qualifications test and Mr. Walden did not, GE Aviation awarded the second-shift Toolmaker position to Mr. Crowley. *See* [R.108-19, Award Notice, PageID #1203].

### E.    Mr. Walden grieved his failure to qualify for a Toolmaker position during the February 2019 process.

Four days after GE Aviation awarded the second-shift Toolmaker position to Mr. Crowley, Mr. Walden filed a grievance under the CBA. *See* [R.108-20, Grievance #2019-026, PageID #1204]. In the grievance, Mr. Walden asserted that he "possess[es] the minimum qualifications for the job," even though he did not pass the testing process, and that, as a result, he should have been awarded the open Toolmaker position because of his seniority. *See id.* The next day, on the same form, GE Aviation denied the grievance at step one of the grievance process, noting "No contract violation." *See id.*

After further discussions with Mr. Walden, on April 8, 2019, the Union on behalf of Mr. Walden appealed to step two of the grievance process (management level). *See* [R.108-21, Grievance Appeal Form, PageID #1205]. On July 23, 2019, GE Aviation provided its step-two answer denying the grievance, explaining:

> The Company maintains that no violation has occurred. Testing has, for many years, been required to determine eligibility for a Toolmaker role. The requirement was communicated to Mr. Walden.

> Yes, the test has evolved over time. But just as they have been in the past, Union leadership was involved in selecting the material used in the current test. The Company is willing to allow Mr. Walden [to take the test again] the next time the job is posted. This offer is being made without setting precedence.

*See* [R.108-22, Final Answer Letter, PageID #1206]. The Union on behalf of Mr. Walden continued to step three of the grievance process. *See* [R.108-7, PageID #1164-65]; [R.108-23, Step Three Document, PageID #1207]. On or about November 5, 2019, the Company responded to the Union, again denying any contract violation had occurred. *See* [R.108-7, PageID #1164-65]; [R.108-24, Step Three Response, PageID #1208].

The Union's Executive Board met and decided not to take Mr. Walden's grievance to arbitration. *See* [R.108-7, PageID #1164]. The Union determined that, on the merits, Mr. Walden would almost certainly have lost because "he didn't meet min quals [minimum qualifications] due to everybody needs a qualified applicant." *See* [R.108-14, PageID #1197]. As Mr. Blades explained, the Union also felt they had a reasonable compromise: "we agreed with the company that Walden could retake the test for a 3rd time if and when another Toolmaker position gets posted." *See id.* The Union informed Mr. Walden of the Union's decision.[1] *See* [R.108-7, PageID #1165].

---

[1]    Another Toolmaker position was subsequently posted and, on February 3, 2023, Mr. Walden failed the test a third time, scoring a 30% on the hands-on skills test. *See* [R.116, PageID #1897].

13

**F.** **Mr. Walden filed an unmeritorious charge against the Union with the National Labor Relations Board (NLRB).**

On May 5, 2020, Mr. Walden filed a Charge with the NLRB against the Union alleging various concerns:

> Since about November 23, 2019, the above-named labor organization has restrained and coerced employees in the exercise of rights protected by Section 7 of the Act by refusing to contact employee [redacted] or [redacted] attorney regarding [redacted] grievance for arbitrary or discriminatory reasons or in bad faith. Additionally, within the last six months, the Union has failed and refused to process his grievances concerning not receiving a tool and die maker job.

See [R.108-25, Charge for Case 10-CB-259982, PageID #1209].

The NLRB evaluated Mr. Walden's Charge carefully, including taking evidence, and dismissed the Charge by June 19, 2020 letter. *See* [R.108-26, Decision Letter, PageID #1210-11]. As to Mr. Walden's allegations that the Union acted arbitrarily or discriminatorily, the NLRB emphasized United States Supreme Court precedent affording unions a "wide range of discretion in the performance of its representation functions[.]" *See id.* at PageID #1210. The decision confirmed that the Union processed Mr. Walden's grievance through step three of the process and relied on Mr. Walden's own testimony to find that Union representatives spoke with him about the grievance and its status. *See id.* at PageID #1211. Additionally, the NLRB concluded that, based on the evidence, the Union's provision of step two and step three documents to Mr. Walden in November 2019 did not mislead Mr. Walden or show any purposeful failure to inform him of the status of his grievance. *See id.*

14

The NLRB concluded there to be "insufficient evidence" to support Mr. Walden's contentions. *See id.*

On July 1, 2020, Mr. Walden appealed the Regional Director's handling of his Charge to the NLRB General Counsel. *See* [R.108-27, Appeal Form, PageID #1214]. After careful consideration, the General Counsel denied Mr. Walden's appeal "substantially for the reasons in the Acting General Director's letter of June 19, 2020." *See* [R.108-28, Appeal Decision Letter, PageID #1215-16]. The General Counsel noted that Mr. Walden improperly sought to make new assertions on appeal, but either way his Charge had no merit. *See id.* at PageID #1215. The General Counsel further explained that the Union owed no duty of fair representation to Mr. Walden's private attorney; Mr. Walden's allegation about retaliation due to his filing a lawsuit was "without merit;" the Union obtained roughly the same grievance result for a younger co-worker as the Union obtained for Mr. Walden; and conduct back to December 2018 had been considered, but Mr. Walden's allegations were simply rejected as unmeritorious and unpersuasive. *See id.* at PageID #1216.

### G. Mr. Walden filed a charge with the Equal Employment Opportunity Commission (EEOC) around the same time.

On June 8, 2019, during the pendency of his NLRB proceedings, Mr. Walden filed a Charge of Discrimination with the EEOC. *See* [R.108-29, EEOC Charge, PageID #1218-19]. On the Charge form, Mr. Walden checked the bases for his allegations to be "Age" and "Retaliation." *See id.* at PageID #1218. Importantly, Mr.

Walden listed the dates discrimination took place as between "12-17-2018" and "06-04-2019," and he did not check "Continuing Action." *See id.* In his Charge, Mr. Walden made only allegations about the December 2018 and February-March 2019 testing processes. *See id.* at PageID #1218-19. He signed the Charge, including all content, as true and correct under penalty of perjury. *See id.* at PageID #1218.

On August 14, 2019, the EEOC issued its Dismissal and Notice of Rights, setting out that the EEOC was "unable to conclude that the information obtained establishes violations of the statutes." *See* [R.108-30, Dismissal and Notice of Rights, PageID #1220].

### H. After the EEOC dismissed the charge, Mr. Walden filed this lawsuit, and the District Court resolved initial motions, limiting the claims.

About three months later, on November 11, 2019, Mr. Walden filed this lawsuit against GE Aviation and the Union, purporting to bring two claims: "Age Discrimination" based on the ADEA and the Kentucky Civil Rights Act (KCRA) and hybrid "Violation of Section 301 of the NLRA" respectively. *See* [R.1, Complaint, PageID #1-6]. After GE Aviation and the Union both filed motions to dismiss, the Court issued a Memorandum Opinion and Order, dismissing Mr. Walden's attempted "KCRA age discrimination claim" as preempted by Section 301 of the Labor Management Relations Act and dismissing the hybrid Section 301 claim as insufficiently pled, but permitting Mr. Walden's ADEA claim to proceed. *See*

[R.16, Memorandum Opinion and Order, PageID #87-97]. Finally, the Court noted that, where Mr. Walden used the term "hostile work environment" in one allegation under the header "Age Discrimination" and GE Aviation did not address this claim, the claim remained. *See id.* at PageID #96. Mr. Walden has not appealed summary judgment on the purported "hostile work environment" claim here.

I.   **Mr. Walden sought leave to file an improper sur-reply during summary judgment briefing, and the Court correctly exercised its broad discretion to deny leave.**

Finally, as relevant to the issues on appeal, Mr. Walden sought leave to file a sur-reply during summary judgment briefing. *See* [R.117, Motion for Leave, PageID #2112-13]. The Proposed Sur-Reply included an extensive fourteen-paragraph Proposed Affidavit. *See* [R.117-1, Proposed Sur-Reply, PageID #2115-17]; [R.118, Affidavit, PageID #2119-20]. The Proposed Sur-Reply and Affidavit sought to re-argue summary judgment issues, rather than target any specific and limited points allegedly deriving from GE Aviation's reply brief. *See id.*

On referral, the Magistrate Judge recommended denial of the motion for leave, concluding that Mr. Walden's proposed sur-reply and affidavit "goes well beyond" any appropriate scope for such a filing and is an improper effort to have the last word. *See* [R.126, Report and Recommendation, PageID #2144]. Mr. Walden objected to the Report and Recommendation generally, but never argued the Magistrate Judge's recommended resolution to be clearly erroneous as required

17

under Rule 72 and the Magistrate Judge Enabling Act, 28 U.S.C. § 636. *See* [R.127, Objections, PageID #2146-47]. Upon review, the District Court agreed with the Magistrate Judge's analysis and found the proposed sur-reply and affidavit to be a wide-ranging and improper attempt to have the last word. *See* [R.128, PageID #2154-55].

## VI.   <u>SUMMARY OF THE ARGUMENT</u>

Summary judgment for GE Aviation should be affirmed for multiple independent reasons. As an initial threshold matter, Mr. Walden makes arguments he never made to the District Court, so he did not preserve arguments he offers to this Court.

On the merits, Mr. Walden's age discrimination claim fails because he cannot show a prima facie case as required to proceed under circumstantial evidence, GE Aviation easily articulates a legitimate nondiscriminatory basis for its non-selection of Mr. Walden for Toolmaker openings based on his failing qualifying tests, Mr. Walden cannot show GE Aviation's decisions to be a pretext for unlawful discrimination, GE Aviation honestly believed in the basis for its decisions based on particularized evidence, and Mr. Walden cannot show there to be any unlawful discrimination here, despite his burden to offer evidence. Mr. Walden's arguments rest on self-interested personal opinion, fueled by a refusal to acknowledge the lawful actions of GE Aviation. Mr. Walden advances scattershot critiques of the Toolmaker testing process, attempting to find some angle by which he may challenge his non-selection. However, as cited by GE Aviation, the record aptly demonstrates why Mr. Walden's creative but flawed efforts conclusively fail.

Similarly Mr. Walden can demonstrate no viable basis to survive summary judgment and proceed with his hybrid Section 301 claim under the Labor

Management Relations Act (LMRA). Because Mr. Walden raised the same arguments to the National Labor Relations Board (NLRB), which found the arguments to have no merit, issue preclusion bars his attempts to relitigate the same matters now. As the record shows, the NLRB permitted Mr. Walden to make arguments, introduce evidence, and appeal the Region's initial adverse decision. Both the NLRB Region and ultimately the NLRB General Counsel carefully considered Mr. Walden's contentions and rejected them on the merits based on longstanding precedent. Either way, Mr. Walden's assertions do not entitle him to any relief under the LMRA. GE Aviation properly adhered to the applicable collective bargaining agreement (CBA) and selected the most senior employee who qualified for Toolmaker roles. While Mr. Walden argues the job posting does not permit testing for the position, GE Aviation established the genesis and history of its specific testing process, including the 85% passing score, benefit of the doubt in scoring, and rounding. Moreover both Mr. Walden and fellow employee Brian King secured an opportunity to retake the Toolmaker test based on grievances (a third time for Mr. Walden after two failed attempts, a second time for Mr. King after one failed attempt). Even upon re-test a third time, which occurred on February 3, 2023, Mr. Walden failed again, and the result was not close.

Finally, the Court should affirm the District Court's proper and reasonable exercise of its broad discretion to deny Mr. Walden leave to file a sur-reply as part

of summary judgment briefing. Mr. Walden sought to file a short sur-reply with an exceedingly broad fourteen-paragraph affidavit that re-argued topics he had already addressed in summary judgment briefing – a plain and impermissible effort to have the last word.

## VII.  **ARGUMENT**

The thorough and well-reasoned decision of the District Court should be affirmed in full for multiple independent reasons. The District Court's exercise of its broad discretion to deny Mr. Walden leave to file a sur-reply during summary judgment briefing should also be affirmed.

### A.    **Mr. Walden Improperly Relies On Unpreserved Arguments.**

First, Mr. Walden relies extensively on unpreserved arguments about the District Court's summary judgment decision. Specifically, as to summary judgment, Mr. Walden repeatedly argues whether the District Court "erred" in its analysis. However, this Court reviews summary judgment decisions under a *de novo* standard that requires renewed consideration of the merits of summary judgment, rather than evaluation of the District Court's analysis. *See George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020) (confirming standard of review).

This distinction matters because this Court only reviews issues raised by Mr. Walden that have been presented to the District Court – the appellate practice hallmark of issue preservation. *See Sheet Metal Workers' Health & Welfare Fund of North Carolina v. Law Office of Michael A. DeMayo, LLP*, 21 F.4th 350, 355 (6th Cir. 2021); *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015). Here, because Mr. Walden did not initially raise certain arguments and never filed a Rule 59 or other like motion to raise his arguments to the District Court about whether

that Court "erred," the District Court never had an opportunity to consider Mr. Walden's arguments he now advances before this Court. *See Sheet Metal Workers' Health & Welfare Fund of North Carolina*, 21 F.4th at 355 (explaining "it would surely seem unfair to that court for a party to ask us to assign error to the district court on an issue the party never presented to the district court in the first instance"). The Appellant's Brief has many arguments that Mr. Walden never raised in his Response in Opposition to GE Aviation's Motion for Summary Judgment. Instead, Mr. Walden has taken analysis from the District Court and critiqued that analysis, which has caused him to make new arguments he never raised before the District Court. Not only do these arguments address whole new topics beyond his District Court briefing, but also they delve into reliance on different citations to statutes, regulations, and caselaw and different record citations, all referenced and argued for the first time at this appellate level. *See, e.g.*, Appellant's Brief at pp. 38-39 (arguing a brand-new contract theory about the job posting never discussed in Mr. Walden' Response in Opposition to Motion for Summary Judgment).

Mr. Walden should have simply argued the merits of summary judgment in his Appellant's Brief, and his choice to focus instead on whether the District Court "erred" as to specific parts of its analysis means the appellate arguments sound improperly, relating to issues not preserved. The Court should affirm the Judgment of the District Court at the threshold level without needing to delve further into the

merits. At a minimum, the Court should hold Mr. Walden carefully to his preservation obligations, permitting him only to raise any arguments that he properly preserved to raise here.

### B. Summary Judgment For GE Aviation Remains The Correct Result.

On the merits, summary judgment for GE Aviation should be affirmed for multiple reasons, each well-grounded in the record and independently meritorious.

### 1. *As an initial matter, per his EEOC Charge, Mr. Walden may not base his ADEA claim on any allegations outside of the time from December 17, 2018, to June 4, 2019.*

As a preliminary issue for the ADEA claim, Mr. Walden should be held to the dates he listed under penalty of perjury in his EEOC Charge as when discrimination allegedly occurred, where his factual allegations under penalty of perjury in the same Charge support the same restriction. This argument rests on longstanding federal law, which this Court should enforce in full measure.

Under the ADEA, an individual must first file a charge of discrimination with the EEOC as a jurisdictional prerequisite to filing a civil action. *See* 29 U.S.C. § 623(d); *Vinson v. Ford Motor Co.*, 806 F.2d 686, 688 (6th Cir. 1986). A charge of discrimination is sufficient if it has "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *See* 29 C.F.R. § 1601.12(b). Any subsequent litigation must be limited to the claims raised in the EEOC charge. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362

(6th Cir. 2010). Where a charging party provides earliest and latest dates of alleged discrimination and does not check "Continuing Action" and the description has no contradictory information, alleged discrete discriminatory actions not listed in the Charge and outside the dates in the Charge have not been sufficiently exhausted because investigation of those actions cannot be expected to grow from the Charge. *See, e.g., Russell v. Three Pillars*, No. 21-1481, 2022 WL 351770, at *4 (6th Cir. Feb. 7, 2022) (affirming dismissal of claim for failure to exhaust the claim before the EEOC based in part on dates reflected in Charge); *Kuhn v. Washtenaw Cnty.*, 709 F.3d. 612, 626-27 (6th Cir. 2013) (same).

Not only did Mr. Walden's Charge specifically limit his allegations to the time from December 17, 2018, to June 4, 2019, but also his factual allegations in the Charge further only addressed two Toolmaker position selection processes (December 2018 and February 2019) in that same period. *See* [R.108-29, PageID #1218-19]. Mr. Walden's separate questionnaire submitted to the EEOC further supports the conclusion that only this limited time may be at issue because it makes no reference to any events or allegations outside of that period. *See* [R.108-31, Questionnaire, PageID #1221-24]. Mr. Walden should not be permitted to litigate any ADEA contentions outside of the time from December 17, 2018, to June 4, 2019, because any contentions like these will not have been exhausted. *See Russell*, 2022 WL 351770, at *4; *Kuhn*, 709 F.3d. at 626-27; *Younis*, 610 F.3d at 362. The Court

should hold Mr. Walden to the period the EEOC investigated based on the dates in his Charge, the factual allegations in his Charge, and even his separate supporting questionnaire submitted to the EEOC.

### 2. Mr. Walden's ADEA failure-to-be-promoted claim fails further on the merits for multiple independent reasons.

Turning to the merits of Mr. Walden's ADEA claim in which he alleges he failed to be selected for Toolmaker positions because of his age, this claim fails for multiple independent reasons. The District Court's summary judgment decision should be affirmed.

Mr. Walden bears the burden to "prove by a preponderance of the evidence . . . that age was the but-for cause of [any] challenged employer decision." *See Pelcha v. MW Bancorp, Inc*., 988 F.3d 318, 323-24 (6th Cir. 2021) (internal quotation and citation omitted). Without direct evidence, which Mr. Walden has not asserted, review of his claim must rely on the familiar *McDonnell Douglas* burden-shifting framework for evaluating circumstantial evidence. *See Rowan v. Lockheed Martin Energy Sys*., 360 F.3d 544, 547 (6th Cir. 2004).

### a. Mr. Walden cannot meet his burden to establish a prima facie case.

Under the first stage of the *McDonnell Douglas* framework, Mr. Walden cannot show a prima facie case of age discrimination. Given Mr. Walden's theory, he bears the burden to offer proof "(1) that he is a member of a protected class; (2)

that he applied for, and did not receive, a job; (3) that he was qualified for the job; and (4) a similarly situated person who was not in the plaintiff's protected class received the job." *See Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003). Mr. Walden cannot show the third or fourth elements.

As for the third element, because Mr. Walden failed the required qualification tests for Toolmaker selection in December 2018 and February 2019, he was not qualified, and his claim fails on this basis alone. Where a plaintiff fails a qualifying examination for the position he seeks, the plaintiff has not established himself to be qualified. *See Highfill v. City of Memphis*, 425 F. App'x 470, 473-74 (6th Cir. 2011); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 938-39 (10th Cir. 2005) (concluding that a plaintiff's arguments about alleged procedural irregularities in testing created no genuine dispute of material fact sufficient to survive summary judgment). In December 2018 and February 2019, everyone who bid for Toolmaker positions responded to the same written test questions and, for February 2019, took the same skills test. *See* [R.108-8, PageID #1167-71]; [R.108-9, PageID #1172-76]; [R.108-10, PageID #1177-81]; [R.108-15, PageID #1199]; [R.108-16, PageID #1200]; [R.108-17, PageID #1201]; [R.108-18, PageID #1202]. Not only did Mr. Walden fail the written test in December 2018, but also his woeful performance on the hands-on skills test in February 2019, where he earned a score of 16%, resulted in his average score being far below the necessary score. *See* [R.108-10, PageID

#1177-81]; [R.108-16, PageID #1200]. Mr. Walden's subjective belief that his failing test scores should somehow count as passing scores offers no help to his claim. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations . . . Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."). That Mr. Walden terms the District Court's conclusion an "inference" does not make it so; the Court properly relied on existing evidence about how the testing developed, including the 85% mark, with only speculation and illogical objection by Mr. Walden otherwise. Accordingly, summary judgment should be affirmed for GE Aviation on Mr. Walden's ADEA claim.

Mr. Walden's various arguments about qualifications miss the mark.[2] For instance, the December 2018 job posting that Mr. Walden insists means he must have received that Toolmaker role contains the following qualifying language:

---

[2]    Most of Mr. Walden's alleged nine issues with the testing process fail on their face and merit little response. For example, Mr. Walden argues his own interpretation of a comment by Mr. Riggs, rather than the comment itself, which is ambiguous at best. *See* Appellant's Brief at 10 ("Walden testified that Tim Riggs . . . insinuated . . ."). Plainly, Mr. Walden's personal conclusion about a purported "insinuation" by Mr. Riggs falls flat against Mr. Riggs' direct explanation of the comment. *See* [R.116-1, PageID #1920-22].

Mr. Walden also speculates broadly that, because a Toolmaker could not recall the specific administration details or verify handwriting from his testing process some 3.5 years earlier and under the pressure of his only ever deposition under penalty of perjury, some adverse conclusion should be drawn. But the

> Note: The job classifications and definitions are merely for purposes of identification and general description and do not purport to be all inclusive or exhaustive of the actual requirements of any job so classified or defined. To be considered, you must list your qualifications or attach a resume or record of experience.

*See* [R.108-5, PageID #1140]. While Mr. Walden seeks creatively to read this qualifying language as somehow inapplicable, GE Aviation utilizes the same language in postings for various skills-trades positions that require testing, where the job posting itself does not explicitly reference testing. *See* [R.116-3, Job Postings, PageID #1947-48]. Mr. Walden's intended (but unsupported) strict reading of the job posting to bar testing for the position also makes little practical sense, where GE Aviation would be selecting Toolmakers without ensuring they can perform the job safely and correctly and, thus, exposing employees to additional risk.

The 85% requirement for the 2018 test is also uncontradicted in the record. Several Toolmakers designed the original 20-question test, also supported by the Union as a requirement for Toolmaker selection. *See* [R.116-1, Riggs Deposition Excerpts, PageID #1914-16]. The Toolmakers told Mr. Riggs no one with sufficient

---

testimony was not as Mr. Walden represents. *See* [R.113-11, Brown Deposition Excerpts, PageID #1686] (responding to question about "how long after [he] had taken the first part of [the test] did [the second part] occur" by explaining in relevant part, "It was a short time. But I don't remember exactly how many, how many days. It may have just been a couple of days"). Mr. Brown even recalled the specific reason he was asked to take five more questions: "[I]t was because the answers to the first 20 questions had been passed around on the shop floor[.]" *See id.* This recollection by Mr. Brown directly supports testimony by Mr. Riggs about why the additional five questions were needed. *See* [R.116-1, PageID #1923-25].

29

knowledge of toolmaking should miss more than three of the questions, *see id.* at PageID #1918-19, which led by simple mathematics to the required 85% score for passing that remained in place for as long as GE Aviation utilized internal testing for the position, including when the test became 25 questions in December 2018. *See id.* at PageID #1926-27. Far from being "unsupported" or some sort of "inference," that 85% requirement was the consistent standard for internal testing until GE Aviation, with the Union's support, opted for external administration of the testing in early 2019.

Turning to the fourth element of the prima facie case, Mr. Walden cannot show individuals who earned Toolmaker positions, even if in a different protected class, to be similarly situated because those individuals passed the written test in December 2018 or written and skills test in February 2019, as required. To determine whether the person who received the job was similarly situated, courts consider "the relative qualifications of the plaintiff and the employee who actually received the promotion." *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011). The necessary analysis could not be more straightforward: the individuals who successfully earned Toolmaker positions passed the required tests, while Mr. Walden failed the same tests, so he can show no one who earned positions to be similarly situated to him. *See, e.g., Smith v. City of Toledo, Ohio*, 13 F.4th 508, 515 (6th Cir. 2021) (finding similarly situated prong not established where "[o]f the

remaining twenty-nine recruits, twenty-seven passed the vertical ventilation test on the first try; the twenty-eighth passed on his second try; Smith never passed, despite nine attempts.").

As to this element, Mr. Walden again seeks to criticize every part of the testing process, baselessly speculating in practical effect that GE Aviation, the Union, and even the community colleges must somehow have deviously conspired to deny him any Toolmaker role, and his desperate attempts to offer this criticism ring hollow. Had Mr. Walden been in charge, he may have administered the testing process differently, but it is well settled that "the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with"; rather, the law only forbids employers from making decisions "for impermissible, discriminatory reasons." *See Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). Mr. Walden's arguments about grading and rounding reflect his personally preferred approach to administering the qualifying tests, rather than GE Aviation's lawful practices, and his misunderstanding that Mr. Riggs graded for demonstration of understanding, rather than verbatim match of answer key, for everyone, including Mr. Walden. As to Mr. Walden's attempted after-the-fact regrading of the December 2018 tests, Mr. Riggs who graded the tests for GE Aviation confirmed that he afforded every test-taker, including Mr. Walden himself, the same benefit of the doubt when an answer demonstrated understanding of the

underlying concept.[3] *See* [R.116-5, Declaration of Riggs, PageID #2092-93]. Mr. Riggs even demonstrated how this same benefit of the doubt specifically benefited Mr. Walden on the same test. *See id.* As one instance, on question 4, the answer key shows the answer to be "left side," but Mr. Walden did not write those words or the equivalent at all; nonetheless Mr. Riggs understood Mr. Walden's analysis and found that analysis sufficient in his professional judgment to be counted as accurate. *Compare* [R.113-17, Answer Key, PageID #1712] *with* [R.108-10, Walden Test, PageID #1177]. Similarly, regarding rounding and testing for the January 2019 postings, Mr. Riggs confirmed that he followed a longstanding routine practice to round up, which benefited every test-taker in the same circumstances. *See id.* at PageID #2093-94. Mr. Walden cannot establish a prima facie case of age discrimination, so summary judgment should be affirmed for GE Aviation on his claim for that reason alone.

> **b.    *GE Aviation easily articulates a legitimate, nondiscriminatory basis for its Toolmaker selections.***

To the extent the Court continues its analysis under the *McDonnell Douglas* burden shifting framework, GE Aviation easily articulates its legitimate,

---

[3]    GE Aviation set out each applicable exercise of professional judgment in detail with specific record citations in its Reply in Support of the Motion for Summary Judgment, *see* [R.116, Reply, PageID #1904-05], and Mr. Walden does not address these details before this Court, electing instead simply and ineffectively to lob generalized accusations of unfair grading again.

nondiscriminatory reason for declining to select Mr. Walden for Toolmaker positions. Specifically, as the Company has shown in the record, Mr. Walden did not pass the tests required for any employee to be awarded a Toolmaker position. *See* [R.108-10, PageID #1177-81]; [R.108-15, PageID #1199]; [R.108-16, PageID #1200]. This explanation squarely meets the requirement. *See, e.g., Wright v. Memphis Light, Gas, & Water Div.*, 558 F. App'x 548, 553-54 (6th Cir. 2014) (finding articulation burden met based on plaintiff's deficient test results); *Shoemaker v. E.I. DuPont de Nemours & Co.*, 405 F. App'x 16, 18-19 (6th Cir. 2010) (finding the requirement met by showing the plaintiff "failed a test" that was required).

### c.    *Mr. Walden cannot meet his burden to show GE Aviation's decisions to be pretextual.*

If the Court examines Mr. Walden's burden to show GE Aviation's decisions about Toolmaker positions to be a pretext for unlawful age discrimination, he cannot begin to approach his burden. Summary judgment should be affirmed for GE Aviation on the age discrimination claim for this reason, too.

In this stage, Mr. Walden must try to "refute the legitimate, nondiscriminatory reason that [GE offered] . . . by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *See Provenzano*, 663 F.3d at 815 (quotation marks omitted). At all times, including this pretext stage, Mr. Walden

bears the burden of showing GE Aviation's "real reason" for declining to select him for Toolmaker positions to have been age discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

Mr. Walden cannot show there to be "no basis in fact" for GE Aviation's decisions not to select him for Toolmaker positions, because his tests show failing scores. *See* [R.108-10, PageID #1177-81]; [R.108-15, PageID #1199]; [R.108-16, PageID #1200]. As to motivation, Mr. Walden has always agreed that the Company told him his failure to pass the testing process led to his non-selection for Toolmaker roles, and there is no evidence to the contrary. *See* [R.108-2, PageID #1121-24]; [R.108-29, PageID #1218]. Finally, as to sufficiency, Mr. Riggs testified at deposition that testing has been required for Toolmaker positions since 2016, confirming testing to be a long-time practice for such positions. *See* [R.108-6, PageID #1144-45]. The bottom line is simple: open Toolmaker positions are awarded to the most tenured individual who not only claims to have the requisite experience, but also passes the required testing. Mr. Walden cannot meet his burden to show his failure to qualify for a Toolmaker job to be pretextual, so summary judgment should also be affirmed on this basis as well.

Despite his burden under Rule 56 to offer specific record citations supporting his pretext argument, Mr. Walden offers none. At best for Mr. Walden, he generally references "all the same reasons discuss [sic] *supra*" in the different context of the

legitimacy of "GE's reason," *see* Appellant's Brief at 51, but this simply is not enough. Notably Mr. Walden makes the bald allegation that somehow GE "set its sights to hire Bryant and Brown," but he offers no evidence in this regard (because none exists); Mr. Walden's conclusory rhetoric in argument carries no evidentiary weight. *See Duha v. Agrium, Inc*., 448 F.3d 867, 879 (6th Cir. 2006). As to results from grievance proceedings for Mr. Walden and Mr. King, the NLRB correctly determined resolutions of the grievances to be "roughly the same accommodation" in that both employees received an additional opportunity to test for Toolmaker positions. *See* [R.108-28, PageID #1216].

### d.   *GE Aviation honestly believed in the basis for its Toolmaker selections.*

Mr. Walden does not address the honest-belief doctrine in his Appellant's Brief, but GE Aviation honestly believed in the basis for its decisions about Toolmaker positions – a complete defense that, when applied, as it should be here, means pretext cannot be shown.

Under the honest-belief rule, where an employer's reason for taking an adverse employment action was based on the employer's honest, non-discriminatory belief drawn from the facts before it, "the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285–86 (6th Cir. 2012) (internal quotation and citation omitted). "[T]o suggest that an employer's

claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a plaintiff must come forward with facts showing an overwhelming disparity in qualifications." *See Johnson v. Weld Cnty., Colo*., 594 F.3d 1202, 1211 (10th Cir. 2010) (internal quotation and citation omitted).

The honest-belief rule applies squarely here. As decisionmaker Tim Riggs confirmed, Toolmaker positions were awarded by considering the seniority of employees whose resumes showed the minimum experience required and who passed the required test – thus, the seniority of qualified candidates. *See* [R.108-32, PageID #1225-26]. To accomplish this end, Mr. Riggs reviewed resumes submitted by employees who bid for openings; tests completed by them or, once the test was outsourced, then test scores; and seniority determinations, altogether constituting the specific facts on which he based his honest belief that, each time, the Company selected the qualified, most senior employees for the openings. *See id.* Mr. Walden cannot show any "overwhelming disparity in qualifications" where he repeatedly failed the required tests, including a woeful 16% on the skills part of the test, and the successful candidates passed the required tests. *See* [R.108-10, PageID #1177-81]; [R.108-15, PageID #1199]; [R.108-16, PageID #1200]. The honest-belief rule applies here and provides yet another independent basis for affirming summary judgment to GE Aviation.

36

e. ***Finally, Mr. Walden's claims fail because there exists no evidence that GE Aviation made discriminatory decisions based on age (because the Company did not do so).***

As a final independent basis for affirming summary judgment, Mr. Walden cannot meet his burden to show the Company's decisions to be pretextual because there exists no evidence that discrimination actually occurred. No evidence in this case shows any discriminatory animus by GE Aviation, which made appropriate and lawful decisions about Mr. Walden.

As the United States Supreme Court has explained, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). The ultimate burden of "'persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *See id.* at 507 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Every employee – of all ages – who bid for a Toolmaker position since 2016 has had to take and pass tests to be qualified. *See, e.g.*, [R.108-8, PageID #1167-71]; [R.108-9, PageID #1172-76]; [R.108-10, PageID #1177-81]; [R.108-15, PageID #1199]; [R.108-16, PageID #1200]; [R.108-17, PageID #1201]; [R.108-18, PageID #1202]. While Mr. Walden grumbles about various personal concerns with administration of the tests, what he cannot show is that he passed the testing process.

His tests in the record speak for themselves. *See* [R.108-10, PageID #1177-81]; [R.108-15, PageID #1199]; [R.108-16, PageID #1200]. Had Mr. Walden passed, he would have been awarded a Toolmaker role, but he repeatedly failed to qualify because he failed the testing process. There is no evidence that age was a factor in Mr. Walden's failure to qualify for a Toolmaker position, let alone the "but-for" cause of his failure. Summary judgment should be affirmed.

### 3. *The NLRB's decision precludes Mr. Walden's contentions relating to his hybrid LMRA claim.*

As to Mr. Walden's hybrid Section 301 claim under the LMRA, he may not proceed further because the NLRB's merits decision precludes him from raising the same issues based on the same assertions he already litigated before the NLRB. Even Mr. Walden concedes the issues to be "admittedly similar." *See* Appellant's Brief at 46. Summary judgment should also be affirmed on this claim.

Under this Court's precedent, when the NLRB has examined the same issues that a party now seeks to relitigate under the LMRA, reviewing courts must apply "the classic test for issue preclusion." *See Olchowik v. Sheet Metal Workers' Int'l Ass'n*, 875 F.2d 555, 557 (6th Cir. 1989). This involves examining three specific steps: "1) is the issue identical to that actually decided by another decisionmaker? 2) was the issue necessary to the earlier judgment? and 3) did the party against whom preclusion would operate have a full and fair opportunity to litigate the issue?" *See id.* Application of this "classic test" supports GE Aviation's position.

Mr. Walden bases his hybrid Section 301 claim on allegations that "[t]he CWA [Union] breached its duty by not providing fair representation or by providing arbitrary representation . . . with respect to this grievance related to seeking the Tool and Die Maker [position] in or around December 2018 and thereafter." *See* [R.21, PageID #134]. This is the same issue raised in Mr. Walden's NLRB Charge – alleged "fail[ure] and refus[al] to process [Mr. Walden's] grievances concerning not receiving a tool and die maker job," including "refusing to contact [him] or [his] attorney regarding [his] grievance for arbitrary or discriminatory reasons or in bad faith" – addressed fully and fairly by the NLRB. *See* [R.108-25, PageID #1209]; [R.108-26, PageID #1210-11]; [R.108-27, PageID #1214]; [R.108-28, PageID #1215-16]. Because the issue before the NLRB has the same character to the issue Mr. Walden now seeks to relitigate, the first step of the classic issue-preclusion test has been satisfied.

The fair-or-arbitrary-representation issue directly underpinned Mr. Walden's NLRB Charge against the Union, and its resolution could not have been more central to resolution of that Charge. After taking and considering evidence, the NLRB Regional Director squarely addressed the issue in his decision denying relief to Mr. Walden, emphasizing United States Supreme Court precedent and making findings based on the record. *See* [R.108-26, PageID #1210-11]. The second step of the issue-preclusion test has been met as well.

Turning to the third step, Mr. Walden had a full and fair chance to litigate his issue before the NLRB, which received his Charge, took evidence from multiple individuals including Mr. Walden, and addressed the issue based on controlling law and evidence in the record. *See* [R.108-26, PageID #1210-11]; [R.108-34, Evidence from NLRB Proceeding, PageID #1229-31]. Contrary to Mr. Walden's arguments in his Appellant's Brief, he asked for the NLRB to examine the period of "in or around December 2018 **and thereafter**." *See* [R.21, PageID #134] (emphasis added). On appeal to the NLRB General Counsel, Mr. Walden actually faulted the NLRB Region for not analyzing "back to December 2018," but as the General Counsel determined, "This is incorrect. Contrary to your assertion, the Region considered all the evidence and did not dismiss the charge on the basis of 10(b), the six month window you refer to on appeal." *See* [R.108-28 at PageID #1216]. While Mr. Walden may wish that the NLRB proceeding had turned out differently, this does not entitle him to any opportunity to relitigate same. Issue preclusion applies.

Because Mr. Walden cannot prevail on his allegations against the Union supporting this hybrid Section 301 claim, he cannot prevail on any part of the claim, including his separate allegations against GE Aviation. *See Swanigan v. FCA US LLC*, 938 F.3d 779, 784 (6th Cir. 2019). Summary judgment should be affirmed for GE Aviation (and the Union), with no further analysis required.

### 4.    *Either way, Mr. Walden's LMRA claim fails further on the merits for multiple reasons.*

Even if the Court declines to find that Mr. Walden is estopped from advancing his hybrid Section 301 claim, the claim still fails for multiple reasons on the merits. On these separate bases, summary judgment should be affirmed for GE Aviation.

Section 301 of the Labor Management Relations Act ("LMRA") allows for "[s]uits for violation of contracts between an employer and a labor organization" to be brought in federal court. *See* 29 U.S.C. § 185(a). Known as hybrid § 301 claims, these employee actions are two "inextricably interdependent" claims in one. *See Garrison v. Cassens Transp. Co*., 334 F.3d 528, 538 (6th Cir. 2003). Employees must prove: (1) "breach of a collective bargaining agreement by the employer" and (2) "breach of the duty of fair representation by the union." *See id.* Failure to show either violation will defeat an employee's claim. *See id.*

As to Mr. Walden's failure to qualify for a Toolmaker position in December 2018, Mr. Walden's attempted hybrid § 301 claim cannot move forward because it is time-barred. *See DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 169–70 (1983) (holding hybrid § 301/fair representation suits as subject to a six-month statute of limitations). Mr. Walden did not grieve his December 2018 failure to qualify, *see* [R.108-12, PageID #1187], so no tolling applies. He did not file this lawsuit until November 11, 2019, far past the six-month mark. *See* [R.1, PageID #1-6]; *DelCostello*, 462 U.S. at 169. Additionally, because Mr. Walden did not grieve

his December 2018 failure to qualify, *see* [R.108-12, PageID #1187], he also failed to exhaust the claim. *See Young v. Int'l Union United Auto., Aero., & Agri. Implement Workers of Amer., Local 651*, 686 F. App'x 304, 310 (6th Cir. 2017).

Either way, pursuant to the NLRB's decision on the merits, the Union committed no contractual violation. GE Aviation did not violate the CBA either, as the four corners of the CBA confirm. As with other contracts, "[t]he construction of collective bargaining agreements . . . is a question of law." *See Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 317–18 (6th Cir. 1984) (citations omitted). As a plain reading shows, under Article XXVIII of the CBA, GE Aviation and the Union agreed that "the relative length of seniority of the employees who [the Company] finds are qualified for . . . upgrading" will be given "first consideration." *See* [R.108-3, PageID #1135]. A local supplemental agreement further confirms that "Open Posted Positions at M-18 and above will be awarded on the basis of Total Plant Seniority to those employees that possess the minimum qualifications." *See* [R.108-4, PageID #1139].

Mr. Walden essentially contends that, because the Toolmaker position announcements explicitly referenced only one qualification – "[g]raduate of GE approved Tool & Die Apprenticeship Program or 5 years of Tool and Die job experience" – that qualification must be the only one required and he should have been awarded the Toolmaker positions. *See* [R.108-5, PageID #1140]. However, the

same position announcements state unambiguously that the listing of qualifications was not "all inclusive or exhaustive of the actual requirements." *See id.* Testing had been part of the selection process for Toolmaker positions since 2016, over two years before Mr. Walden ever sought any such position. *See* [R.108-2, PageID #1125]. Where both the applicable CBA provision and local supplement confirm that seniority applies only to "qualified" employees and Mr. Walden was not qualified based on his repeated failing test scores, GE Aviation's actions in declining to select Mr. Walden for Toolmaker positions conforms to the contract language. Summary judgment should be affirmed for GE Aviation on this claim as well.

### C. The District Court correctly exercised its discretion to deny Mr. Walden leave to file an overbroad sur-reply during summary judgment briefing.

Finally, the Court should affirm the District Court's reasonable exercise of its broad discretion to deny leave for Mr. Walden to file an improperly extensive sur-reply during summary judgment briefing.

"As many courts have noted, [s]ur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *See Dhillon v. Grewal*, No. 3:22-CV-197-RGJ, 2023 WL 131111, at *3 (W.D. Ky. Jan. 9, 2023) (slip copy) (internal quotations and citations omitted). Generally, reviewing courts grant leave to file sur-replies only when a reply brief

introduces new material evidence, rather than when a reply brief simply engages existing facts. *See Mirando v. Dep't of Treasury*, 766 F.3d 540, 549 (6th Cir. 2014).

Based on the Magistrate Judge's thorough Report and Recommendation, [R.126, PageID #2142-44], the District Court correctly determined there should be no sur-reply here, [R.128, PageID #2154-55]. The one and only paragraph of arguments in the proposed sur-reply simply repeats contentions already made by Mr. Walden in summary judgment briefing about his self-interested personal view of how testing should be administered. *See* [R.117-1, PageID #2115-17]. That paragraph of the proposed sur-reply even includes one sentence with the introductory phrase "As described more in the Response already filed" and points to three exhibits filed with that previous Response. *See id.* at PageID #2116. There is no credible dispute that Mr. Walden already made the same (incorrect and unpersuasive) arguments in that earlier Response. *See* [R.113, Response, PageID #1256, 1262-63, 1277] (test change arguments); *id.* at PageID #1266, 1273-74 (Brian King argument); *id.* at PageID #1271-72 (Crowley argument). Mr. Walden sought to have the last word on these issues – putting his spin on them yet again – and as the District Court correctly concluded, that is not a proper or permissible purpose for a sur-reply.

The inappropriate affidavit from Mr. Walden submitted with the proposed sur-reply made matters worse. The proposed sur-reply only cites to the affidavit a single

time (as compared to three prior exhibits already filed with Mr. Walden's Response that he cites). *See* [R.117-1, PageID #2116]. That single affidavit citation corresponds only to the following sentence from Mr. Walden: "Riggs and Skilled Trade Union Steward Brad Brown went over the 25-question test with [Mr. Walden]." *See id.* Still, Mr. Walden submits a brand-new fourteen-paragraph, single-spaced affidavit anyway. *See generally* [R.118, PageID #2119-20]. This affidavit addressed far more than simply a meeting between Mr. Riggs, Mr. Brown, and Mr. Walden and instead tried to go through and repeat Mr. Walden's broader assertions (yet again) – a highly transparent attempt to have the last word that the District Court properly determined not to tolerate.

The denial of Mr. Walden's motion to file a sur-reply was appropriate. He should not have been allowed to have the last word on summary judgment briefing, whether by brief argument in the proposed sur-reply or wide-ranging new testimony in the affidavit.

## VIII. <u>CONCLUSION</u>

The well-reasoned Judgment of the District Court should be affirmed in full.

<u>Dated</u>:    May 28, 2024                    Respectfully submitted,


                                                    */s/ Jay Inman*_____
                                                    Jay Inman
                                                    Jessica N. Wimsatt
                                                    LITTLER MENDELSON, P.S.C.

333 West Vine Street, Suite 1720
Lexington, KY  40507
Telephone:  859.317.7973
Facsimile:  859.201.1250
E-mail:       jinman@littler.com
                   jwimsatt@littler.com

*Attorneys for General Electric*
*Defendant-Appellee*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE, AND TYPE STYLE REQUIREMENTS</u>

Pursuant to Federal Rule of Appellate Procedure 32(a), the undersigned certifies:

- This brief follows the type-volume limitation of Rule 32(a)(7)(B) because the brief does not have over 13,000 words or 1,300 lines of text.

- This brief follows the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in proportionately spaced typeface using 2010 Microsoft Office Word, in 14-point Times New Roman Font.

*/s/ Jay Inman*
Jay Inman

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on May 28, 2024, I electronically filed the foregoing *Appellee's Brief* with the Clerk of the Court using the ECF system, which gives notice to all parties by counsel.

*/s/ Jay Inman*
Jay Inman

## ADDENDUM 1

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| DOCUMENT | RECORD NUMBER | PAGE ID NUMBERS |
|---|---|---|
| Complaint | 1 | 1-6 |
| Memorandum Opinion and Order | 16 | 87-97 |
| Amended Complaint | 21 | 134 |
| Offer Letter | 108-1 | 1113 |
| Walden Deposition Excerpts | 108-2 | 1118-1125 |
| CBA Excerpts | 108-3 | 1127-36 |
| Local Agreement Excerpt | 108-4 | 1139 |
| Posting #2018-081 | 108-5 | 1140 |
| Riggs Deposition Excerpts | 108-6 | 1144-45, 1153-62 |
| Blades Affidavit to NLRB | 108-7 | 1164-65 |
| Brown Test | 108-8 | 1167-71 |
| Bryant Test | 108-9 | 1172-76 |
| Walden Test | 108-10 | 1177-81, 2093-94 |
| Award Notice | 108-11 | 1182 |
| Brown Deposition Excerpts | 108-12 | 1185-87 |
| Postings #2019-018 and #2019-019 | 108-13 | 1189-90 |
| Blades Deposition Excerpts | 108-14 | 1193-97 |
| Walden Written Test Scoresheet | 108-15 | 1199 |
| Walden Skills Test Scoresheet | 108-16 | 1200 |
| Crowley Written Test Scoresheet | 108-17 | 1201 |
| Crowley Skills Test Scoresheet | 108-18 | 1202 |
| Award Notice | 108-19 | 1203 |
| Grievance #2019-026 | 108-20 | 1204 |
| Grievance Appeal Form | 108-22 | 1205 |
| Final Answer Letter | 108-22 | 1206 |
| Step Three Document | 108-23 | 1207 |
| Step Three Response | 108-24 | 1208 |
| Charge for Case 10-CB-259982 | 108-25 | 1209 |
| Decision Letter | 108-26 | 1210-11 |
| Appeal Form | 108-27 | 1214 |
| Appeal Decision Letter | 108-28 | 1215-16 |
| EEOC Charge | 108-29 | 1218-19 |

| DOCUMENT | RECORD NUMBER | PAGE ID NUMBERS |
|---|---|---|
| Dismissal and Notice of Rights | 108-30 | 1220 |
| Questionnaire | 108-31 | 1221-24 |
| Declaration of Tim Riggs | 108-32 | 1225-26 |
| Evidence from NLRB Proceeding | 108-34 | 1229-31 |
| Response | 113 | 1256, 1262-63, 1266, 1271-74, 1277 |
| Brown Deposition Excerpts | 113-11 | 1686 |
| Answer Key | 113-17 | 1712 |
| Reply | 116 | 1897, 1904-05 |
| Riggs Deposition Excerpts | 116-1 | 1914-16, 1918-27 |
| Job Postings | 116-3 | 1947-48 |
| Declaration of Riggs | 116-5 | 2092-93 |
| Motion for Leave | 117 | 2112-13 |
| Proposed Sur-Reply | 117-1 | 2115-17 |
| Affidavit | 118 | 2119-20 |
| Report and Recommendation | 126 | 2142-44 |
| Objections | 127 | 2146-47 |
| Memorandum and Order | 128 | 2154-55 |
| Judgment | 129 | 2170 |
| Notice of Appeal | 130 | 2171 |